**FENLEY FARMS, INC.,**
**Plaintiff-Appellant,**

v.

**Frankie CLARK, Carl Quinn, Mary Olson and Maudie Garvin,**
**Defendants-Appellees.**

**No. 1–1279A349.**

Court of Appeals of Indiana,
First District.

May 27, 1980.

Geoffrey Segar, David L. Gray, and Philip A. Whistler, Ice, Miller, Donadio & Ryan, Indianapolis, Carroll E. Hess, Jeffersonville, for plaintiff-appellant.

Howard J. Snyder, Jeffersonville, for defendants-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant Fenley Farms, Inc. appeals a judgment by the Clark Superior Court in favor of defendants-appellees Mary Olson and Maudie Garvin [1] denying Fenley Farms damages for trespass and an injunction against future trespasses. We affirm.

## FACTS

Defendants own a five-acre tract of land fronting on the Ohio River. Plaintiff owns land which borders Defendants' property on the north and northwest and which lies between Defendants' property to the southeast and Westport Road to the northwest. Defendants, without notice to or permission from Plaintiff, hired a bulldozer operator who bulldozed a road from Westport Road across Plaintiff's property to Defendants' property. Plaintiff filed its complaint for trespass and for an injunction; Defendants counterclaimed alleging slander of title. The trial court entered judgment for Defendants on Plaintiff's complaint and for Plaintiff on Defendants' counterclaim.

## ISSUES

Plaintiff raises eight issues for our review:

I. Whether the evidence is sufficient to support a finding of an easement based on implication from necessity;

II. Whether the evidence is sufficient to support a finding of an easement based on prescriptive use;

III. Whether the evidence is sufficient to establish that any such easement was abandoned or reacquired by adverse possession;

IV. Whether the evidence is sufficient to establish that the bulldozed road exceeded the scope of any such easement;

V. Whether the evidence is sufficient to support a finding that the bulldozed road is a public highway;

VI. Whether the evidence is sufficient to support a finding that the bulldozed road corresponded in location and width to any such easement or public highway;

VII. Whether the use of Ind.Code 8–20–1–15 as a defense to a suit for trespass under these facts is unconstitutional; and

VIII. Whether Plaintiff is entitled to an injunction against further trespasses.

We need only address Issues V, VI as it relates to a public highway, and VII in our disposition of this appeal.

## DISCUSSION AND DECISION

In Issues V and VI, Plaintiff challenges the sufficiency of the evidence in an appeal from a judgment upon a claim tried to the court. Our well-established standard of review in such instance was stated in *University Casework Systems, Inc. v. Bahre,* (1977) Ind.App., 362 N.E.2d 155, 159:

"[O]n appeal of claims which have been tried to the court without a jury this court will not disturb the judgment of the trial court unless clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A). The findings or judgment of the trial court will be found clearly erroneous only when upon our review of all the evidence we are left with a definite and firm conviction that the trial court erred."

It is also well established that the judgment of a trial court will be affirmed if sustainable on any basis, *Ertel v. Radio Corporation of America,* (1976) Ind.App., 354 N.E.2d 783, and that we will not weigh the evidence nor determine the credibility of the witnesses but will look only to the evidence and reasonable inferences therefrom which tend to support the trial court's decision. *Bureau of Motor Vehicles v. Pentecostal House of Prayer,* (1978) Ind., 380 N.E.2d 1225.

*Issue V*

Plaintiff concedes that a public highway may be established by sufficient evidence of public use pursuant to Ind.Code 8–20–1–15 which provides, in relevant part:

---

1. Frankie Clark and Carl Quinn were named as additional defendants in Fenley Farms's complaint but failed to appear. The trial court entered their default and they did not participate in this appeal.

"All county highways heretofore laid out according to law, or used as such for twenty [20] years or more, shall continue as originally located and as of their original width, respectively, until changed according to law."

*Columbia Realty Corporation v. Harrelson,* (1973) 155 Ind.App. 604, 293 N.E.2d 804. It wrongly contends, however, that the record fails to disclose sufficient public use for the requisite period to support a finding of the establishment of a public highway across its property.

■■■ Plaintiff correctly argues that even if the record supports a finding of a public highway established by public use under the statute, the right of the public to use such highway may be lost by abandonment. *Jeffersonville, Madison, and Indianapolis Railroad Company v. O'Connor,* (1871) 37 Ind. 95. Plaintiff wrongly contends, however, that the record fails to disclose sufficient public use to negate a claim of abandonment of the public highway across its property.

We begin our analysis by gleaning from the record all evidence of use of the contested strip of land across Plaintiff's property as a roadway.

During his lifetime, Levi Bowyer owned the tracts of land now owned by Plaintiff and Defendants, as well as other contiguous tracts, and operated on Defendants' tract a ferry landing, store, and post office. Persons used wagons and buggies to travel across Plaintiff's and Defendants' tracts between the ferry landing and Westport Road. In 1852, following the death of Levi Bowyer, commissioners partitioned his land holdings among his heirs, taking into account the value of the ferry landing. The parties stipulated that in and prior to 1874, the ferry landing was in existence as was a roadway between the landing and Westport Road, the roadway being used by ferry passengers and others traveling from the landing. The evidence conflicts as to the year the ferry ceased operation: sometime after 1874 but before 1941, as stipulated by the parties; about 1860; sometime before the birth of Leona Bowyer Wood, a school-teacher who was retired at time of trial. A reasonable inference from this evidence is that the roadway was used by persons traveling between Westport Road and the ferry landing at least from 1852 until 1874, a period of 22 years.

The record shows the following additional use of the roadway, primarily by owners of the various riverfront tracts carved from the original Levi Bowyer tract: Jasper Conn, landowner from 1899 to 1948, lived on his property at one time and used the roadway to get to work each day. A Hicks family owned Defendants' tract from 1906 to 1917 and used the roadway to get to its property. A Garrett family owned Defendants' tract from 1917 to 1919 and used the roadway to get to its property. Cornell Wood, nonlandowner, and his fellow ballplayers used the roadway around 1920 to get to Kentucky for a game. A DeJarmetts family, landowners from 1917 to 1933, used the roadway to get to its property on weekends and to secure groceries and supplies while there.

Mr. and Mrs. George Johnston, prior owners of Defendants' tract who lived there from 1933 to 1945, traveled the roadway by tractor and on foot, drove cattle down it, and depended on its use to secure livestock feed when the river froze in 1936 and crossing to Kentucky was impossible. Mrs. Johnston, now Mrs. Griswold, testified that, during the time she lived on the river, the roadway was also used by: a visitor to the Conn property who traveled the road by car; a Mr. Sigmon, not shown to be a landowner in the abstract put into evidence, who traveled it on horseback; three boys, nonlandowners looking for a lost hunter, who left her property saying, "Let's use the Old Road"; and persons who came down the roadway to cross the river in private boats or to meet packet boats which continued to use the old ferry landing and whose cargoes were hauled inland over the roadway. Mrs. Griswold testified that when the roadway washed out the men of the area would repair it.

Carl Thameling, landowner from 1939 to 1964, used the roadway to haul in lumber to

build a riverfront camp and to reach his camp, knocking down any fences or gates placed on Plaintiff's property across the roadway. In 1948, Leona Bowyer Wood, nonlandowner, drove partway and walked the rest of the way to the river with a friend. Frankie Clark, a defendant below and a landowner of a riverfront tract since 1964, has driven along the roadway onto Plaintiff's property through a gate and up to a fence and walked the rest of the road to his property two or three times each year. A Moore family, Defendants' grantors, walked the roadway to get to its property.

Defendants were deeded their tract in July 1974, and reached it by driving some 500 feet down the roadway then continuing on foot. This continued until Plaintiff filed suit in February 1975. A resident caretaker of Defendants' property walked the road each day to and from his second job. The parties stipulated that at least since 1941, the only users of the roadway were Defendants, their immediate predecessors in title, and others owning the riverfront lots carved from Levi Bowyer's original land holdings.

Immediately prior to the bulldozing, the roadway evidenced general disuse, contained sections which were washed out, and was overgrown with underbrush and saplings, the biggest of which was five or six inches in diameter.

Plaintiff argues that the evidence of use in conjunction with the ferry landing is insufficient to establish a public highway under Ind.Code 8–20–1–15 in that: 1) a 20-year period of use was not shown because the only evidence of duration of use was a stipulation to the ferry's existence in 1874, and there was no evidence as to continuous use for the requisite period; and 2) such use was not by the general public under a claim of right but by the customers of a private commercial enterprise, and could not support a finding of implied dedication.

■ Plaintiff overlooks the following evidence of use in conjunction with the ferry landing in addition to the stipulation of use

in 1874: The parties also stipulated to such use "for prior years thereto"; the 1852 commissioners deed to the heirs of Levi Bowyer shows that Levi died in or before 1852 and makes reference to "the ferry, the value of which was taken into consideration as directed in the order of partition and their quantity of land diminished in proportion to the value thereof"; and Levi Bowyer's great-granddaughter testified that Levi ran the ferry during his lifetime and that the roadway was then traveled by wagons and buggies. This amply demonstrates use from at least 1852 until 1874, more than the necessary 20 years. It does not matter that there was no evidence as to the continuity of use during this period because the frequency of use is unimportant. *McHenry v. Foutty*, (1945) 223 Ind. 335, 60 N.E.2d 781. A road is nonetheless a highway through rarely used, if used by those who desire to go that way. *Stewart v. Swartz*, (1914) 57 Ind.App. 249, 106 N.E. 719.

■ Plaintiff's contention that the requirement of public use is not satisfied by use by those having business with the ferry is likewise of no avail. "Public" in this connection means "all those who have occasion to use" the road. *Gillespie v. Duling*, (1908) 41 Ind.App. 217, 221, 83 N.E. 728, 730. In *New York, Chicago and St. Louis Railroad Company v. Lincoln National Life Insurance Company*, (1957) 127 Ind.App 608, 142 N.E.2d 437, the Appellate Court characterized as use by the public the use of a crossing by the employees of and those having business with the appellee, a private enterprise.

■ Plaintiff also errs in contending that the evidence fails to show public use under claim of right and that a finding of implied dedication is somehow required. In *Pitser v. McCreery*, (1909) 172 Ind. 663, 669–72, 88 N.E. 303, 306, the Supreme Court said:

"Under the statute but one question is presented, and that is, Has the road been used as a highway for twenty years? . . If it has, the statute fixes its status as a highway, and it is wholly immaterial whether the use has been with the con-

sent, or over the objection of the land-owner . . . It is not a question of a common-law dedication, or a way strictly by prescription, though analogous to the latter. . . . It is a statutory high-way, by twenty years' user, irrespective of all other methods of creating high-ways. It is a highway created by statute.

If a highway arises by dedication, user for twenty years is not essential. A high-way arising by prescription strictly, if highways can properly be said to arise by prescription, involves the question of an adverse use, but this statute involves nei-ther of these considerations, and this fur-nishes the reasoning of the cases, that it is immaterial under this statute, whether the use is with the consent, or over the objection of the landowner, and in either event if the use exists for the statutory period, the status of the road is fixed as a highway . . .. 'Under the issues joined on this petition, it was immaterial whether there had been any dedication or not, or any attempt to lay it out. It would become a highway and appellees would have just as great a right to the relief asked in case the highway, if the use had been without the consent, or over the objection of the adjoining landown-ers, as if it had been dedicated by them, if it had been continually used as such for the twenty years.' *McKeen v. Porter* (1893), 134 Ind. 483, 489, 34 N.E. 223, 225.

In the case last cited it was held that evidence of opening and paving the way, was admissible as tending to show an opening for public use, and might tend to show dedication to the public use, yet the user must be shown, under the statute in question. The way does not arise from dedication, but from the user under this particular statute, under which the claim is made, and dedication or the intent of the owners is unimportant. . . .

If the consent or objection of the land-owner is equally immaterial in creating the way, it must be evident that no ques-tion of common-law prescription strictly arises, because adverse use is of its es-sence, unless it can be said that use, over objection, shows the adverse claim of the public; but that will not do, for, if that were so, use by consent could never ripen into a right or establish a highway under this statute; and it is equally certain that the question of dedication is not an ele-ment in the consideration, but the statute fixes the status of the way, irrespective of prescription or dedication. . . .

. . . *We would not be understood as declaring, even under this statute, that the use need not be under a claim of right.* But, in line with the decided cases, *the use may be either with the owner's consent or over his objection.* The fact of public use with consent is more than a permissive use, for it involves concession, much more than permission, which im-plies use upon request. *Use with consent is, in effect, under a claim of right, while use over objection is high evidence of a claim of right.*" (Citations omitted and emphasis added.)

Since use is the sole test, with or without consent, the evidence amply supports a finding of public use under claim of right as defined in *Pitser, supra,* and the concept of implied dedication has no relevance to Ind. Code 8–20–1–15.

Plaintiff lastly contends the evidence es-tablishes that any such highway was aban-doned because: 1) the parties stipulated to absolute nonuse by the public for more than the last 35 years; 2) its use was not contin-uous since 1874; 3) Plaintiff obstructed the highway intending to exclude the public; 4) prior to the bulldozing, the highway was unsuitable for vehicular traffic; 5) public authorities have never maintained the high-way; and 6) public need for the highway ended with the demise of the ferry.

■ The case law under Ind.Code 8–20–1–15 shows that the law which defines the character of use necessary to establish a public highway under the statute also defines the character of use necessary to negate a claim of abandonment. *See Small v. Binford,* (1908) 41 Ind.App. 440, 83 N.E. 507, 84 N.E. 19.

■ Plaintiff incorrectly characterizes the parties' stipulation as to use during the

last 35 years. The stipulation was not to absolute nonuse by the public but to use only by Defendants, their immediate predecessors in title, and other owners of riverfront lots carved from the original Bowyer tract. The public use necessary to prevent abandonment is merely use by those who have occasion to use the highway. *Gillespie, supra.* The fact that a highway is rarely if ever used by persons other than landowners makes it nonetheless a public road. *Small, supra.* If the road is open only on one end, as here, and if it goes only to one property, it is still a public road. *Gillespie, supra.* A road may be a public highway although it is of no great length and terminates on private property. *Stewart, supra.*

Any gaps in the use of the highway since 1874 are immaterial because frequency of use is unimportant and a road is nonetheless a highway though rarely used, if used by those who desire to go that way. *Stewart, supra.*

The parties stipulated the roadway is the "only reasonable roadway providing a means of ingress and egress from the property of the defendants, . . . The only other means . . . being a navigable body of water and a public right-of-way," the Ohio River. In *Small, supra,* 41 Ind. App. at 445–46, 83 N.E. at 509, the Appellate Court said:

> "To cut off the egress and ingress of landowners is not the policy of the law, and therefore an abandonment effecting such result will not be presumed. Vacation of highways is not favored, and the presumption is always in favor of their continuance. *Kyle v. Board, etc.* (1884), 94 Ind. 115, 116." [2]

The record shows sufficient use by riverfront landowners, plus incidental use by others, to negate a claim of abandonment.

■ Plaintiff's attempts to obstruct passage along the highway with fencing and a gate are also immaterial. Since use is the sole test, the relevant fact is that use continued notwithstanding the attempted obstruction; thus, the highway was not abandoned. *Spindler v. Toomey,* (1953) 232 Ind. 328, 111 N.E.2d 715; *McHenry, supra; Cozy Home Realty Company v. Ralston,* (1938) 214 Ind. 149, 14 N.E.2d 917; *Pitser, supra.*

■ The fact that public authorities have not worked or improved the highway does not change its status, *Smolek v. Board of County Commissioners of Pulaski County,* (1979) Ind.App., 386 N.E.2d 997; *Pitser, supra*; nor does evidence that prior to the bulldozing, the road was unsuitable for vehicular traffic. *See Pitser, supra; New York, Chicago and St. Louis Railroad Company, supra; Stewart, supra.* The demise of the ferry likewise has no effect on the status of the highway because once a way has become a public highway by user, it is such regardless of any question of public utility. *Pitser, supra.*

The trial court's judgment for Defendants can be affirmed on the theory of the establishment and continued existence of a public highway under Ind.Code 8–20–1–15.

*Issue VI*

■ Plaintiff argues that the party alleging the establishment of a public highway by public use under Ind.Code 8–20–1–15 is required to prove the exact location, width, and description of such highway and contends that Defendants failed in this proof. The statute states that such highways "shall continue as originally located and as of their original width," and Defendants, by pleading the statute in avoidance, must bear this burden of proof. Ind.Rules of Procedure, Trial Rule 8(C) (West 1978).

■ As to the original location and width, the record shows this evidence: A partition plat from a Probate Order Book F, bearing the name of one of the commissioners who partitioned Levi Bowyer's land among his heirs, shows the approximate location of the old roadbed from the ferry landing across what is now Defendants' and

---

2. *But see Jeffersonville, Madison, and Indianapolis Railroad Company, supra,* where the Supreme Court 13 years before *Kyle* said nonuse for 36 years gave rise to a presumption of abandonment.

Plaintiff's properties. The parties stipulated to this. Exhibit C shows the Bowyer tract as subdivided today and the roadway from the property of Defendants across Plaintiff's property to Westport Road. The parties stipulated to this. Witnesses testified that the maps omitted only some minor curves.

Defendants both testified that prior to the bulldozing, the roadbed could be visually detected as a "rock bed" in the location where the plat showed the old roadway to be, and that it was that visible roadbed that was bulldozed. Olson said, "[Y]ou could tell just exactly the way the road went." Frankie Clark testified that portions of the old roadbed had been visible and had resembled a bobsled trail.

The parties stipulated that the topography of the area "would make it practically impossible" to travel from Defendants' property to Westport Road by any other route, and Garvin testified, "[T]here's just no other place that the road could be." Garvin emphasized that the bulldozed roadway deviated from the existing roadbed "[i]n no way, shape or form," and that no turnarounds were cut.

Mrs. Griswold testified that the road between the ferry and Westport Road was wide enough for horsedrawn wagons and tractors.

The only conflicting testimony was that of Frank J. Kelly, officer of Fenley Farms, Inc., who testified that he had viewed only a portion of Plaintiff's property prior to the bulldozing and had observed no visible signs of a roadbed on that portion, and that the bulldozer had cut two turnarounds in addition to the roadway.

The trial court granted the parties' joint motion and viewed the premises.

Plaintiff relies on language from *Columbia Realty Corporation, supra,* 293 N.E.2d at 810, "Columbia had the burden of establishing . . . the exact location and description" of the highway established by public use, contending that this language required Defendants to put into evidence a legal description of the road based on a land

survey plus the exact width in some stated measure. We find Plaintiff's interpretation of this language from *Columbia Realty Corporation* too demanding in view of the statute which speaks only of original location and original width.

In *Columbia Realty Corporation,* there was conflicting evidence, and no direct evidence, as to the location of the road. In the case at bar, there was no conflict in the evidence of location, there was testimony as to direct visual evidence of the original location, there was testimony that the original road was wide enough for wagons and tractors, and the trial court judge, after hearing the testimony and considering the stipulations and exhibits, viewed the premises. We cannot say that our review of all the evidence leaves us with the definite and firm conviction that the trial court could not have found a public highway because of failure of proof of original location and width. A finding that the bulldozed road corresponded in location and width to the old ferry road would not be clearly erroneous.

*Issue VII*

Plaintiff lastly contends that to allow Defendants to use Ind.Code 8–20–1–15 as a defense to trespass is a taking of Plaintiff's property for private use and, thus, a violation of Article 1, §§ 21 and 23 of the Indiana Constitution and the due process clause of the Fourteenth Amendment to the United States Constitution. Plaintiff's argument is built on the faulty premise that the strip of land established as a public highway under the statute was its property until the trial court's judgment in this cause. To the contrary, the highway was shown to have come into existence as early as 1874, and to have continued to date. When Plaintiff took title in 1966, the roadway across the property had already become a public highway under the statute, was being used occasionally by landowners of riverfront lots, and was visible at least along some portions.

The law has always imputed to a purchaser of land all information which would have been conveyed by an actual

view of the premises, and when one purchases property where a visible state of things exists which could not legally exist without the property being subject to some burden, he is taken to have notice of the nature and extent of the burden. 92 C.J.S. *Vendor and Purchaser* § 328 (1955); *see Smith v. Schweigerer*, (1891) 129 Ind. 363, 28 N.E. 696; *Indiana, Bloomington and Western Railway Company v. McBroom*, (1887) 114 Ind. 198, 15 N.E. 831. Thus, when the property was conveyed to Plaintiff, Plaintiff was, as a matter of law, charged with knowledge of the visible roadbed and with notice of the nature and extent of the burden represented by the roadway. Plaintiff did not take title to the roadway and is charged with knowledge of that fact at the time it took title to the property traversed by the highway. Defendants' use of Ind.Code 8–20–1–15 deprived Plaintiff of nothing and Plaintiff was not prejudiced thereby.

Plaintiff's citations to authority are unavailing. In *Logan v. Stogsdale*, (1889) 123 Ind. 372, 24 N.E. 135, the Supreme Court held unconstitutional an 1889 statute which gave to any freeholder with no outlet to a highway the right to petition the board of county commissioners to establish a branch highway across the land of another. The court found the very tenor of the act to indicate that it was intended to authorize the seizure of the property of one citizen for the benefit of another and that the act could not be construed as one authorizing only the establishment of public roads. To the contrary, Ind.Code 8–20–1–15 clearly authorizes the establishment of a public road. In *Fountain Park Company v. Hensler*, (1926) 199 Ind. 95, 155 N.E. 465, the Supreme Court found unconstitutional a statute which conferred on certain Chautauqua associations the power of eminent domain to acquire land on which to hold their assemblies, holding that the statute conferred the power of eminent domain upon a private corporation for purposes which did not constitute a public use. Ind. Code 8–20–1–15, on the other hand, confers upon the public the power to lay claim to property for public use as a highway. In

*State v. Smith*, (1978) Ind.App., 381 N.E.2d 873, the State attempted to use its power of eminent domain to take property to widen a public alley to facilitate truck deliveries to a private business. This court found that the State could not exercise its power of eminent domain for the purpose of establishing a private road from which the public at large would not derive a benefit. In the case at bar, the public established the highway through public use at a time when the public clearly benefited from an access road to the ferry landing from Westport Road. Once established, an indefeasible right is vested in the public, *New York, Chicago and St. Louis Railroad Company, supra*; the owner of the fee cannot divest the public's interest therein, *Discher v. Klapp*, (1954) 124 Ind.App. 563, 117 N.E.2d 753; and according to the statute, the highway continues to exist until "changed according to law."

We hold that the judgment for Defendants on Plaintiff's suit for trespass is not clearly erroneous because it can be sustained on the theory that Defendants were using a public highway across Plaintiff's property established by public use under Ind.Code 8–20–1–15. We have not considered whether the judgment could be sustained on any of the other theories advanced by Defendants.

The judgment of the trial court is affirmed.

Affirmed.

ROBERTSON, P. J., and RATLIFF, J., concur.