**David M. ZAKUTANSKY,**
**Appellant–Plaintiff,**

v.

**Henry KANZLER, Appellee–Defendant.**

No. 64A05–9208–CV–00298.

Court of Appeals of Indiana,
Fifth District.

May 12, 1994.

**76**

Kathryn D. Schmidt, Burke Murphy Costanza & Cuppy, Merrillville, for appellant-plaintiff.

Matthew D. Soliday, Rice & Rice, Portage, for appellee-defendant.

SHARPNACK, Chief Judge.

David M. Zakutansky appeals the trial court's judgment in favor of Henry Kanzler. The trial court found that a private roadway abutting the parties' properties became a public highway pursuant to Ind.Code § 8-20-1-15. Zakutansky raises three issues on appeal, which we consolidate and restate as whether certain findings by the trial court are clearly erroneous, rendering the judgment contrary to law. We affirm.

The facts most favorable to the judgment show that the roadway at issue, "Marine Avenue," is a 31.5 feet by 1600 feet roadway located in the City of Portage, Porter County, Indiana. The land north of Marine Avenue abuts the Burns Ditch Waterway, which opens to Lake Michigan. The abutting land and roadway parcel were owned originally by Peter Crumpacker. After Peter Crumpacker's death in 1918, the land was placed in a trust of which his son, Edgar D. Crumpacker, was trustee. Edgar Crumpacker divided the property into several parcels around 1939 and sold them to several individuals as recreational home lots. The property owners built small cottages and used the properties for boating, fishing, and scenic river trips. Because Crumpacker owned the property between the lots and the closest public road, Marine Street, the property owners needed access to their properties. The plats of the area from 1939, which were not recorded, show Marine Avenue as an approximately thirty-foot wide "easement for a road."

Upon Edgar Crumpacker's death, William P. Crumpacker became owner of Marine Avenue. During the 1950's and 1960's, William Crumpacker placed signs at the entrance of Marine Avenue indicating that the roadway was private property.

The Crumpacker Estate deeded Marine Avenue to Zakutansky without warranties on January 1, 1990, for $15,000.00. The tax duplicate sent by the auditor's office describes Marine Avenue as a "private road." When Zakutansky bought Marine Avenue, he obtained a title insurance policy insuring his fee ownership of the thirty-foot wide strip, but not insuring over the rights of the public to use Marine Avenue because the title company found nothing of record to show that Marine Avenue was an express easement.

Marine Avenue has no outlet at its west end. Zakutansky's father owns the property at the east entry of Marine Avenue, upon which he operates a business called South Shore Marina. Marine Avenue passes through the middle of his father's property. South Shore Marina stores boats and in so doing moves boats and other equipment back and forth across Marine Avenue. Marine Avenue intersects with Marine Street, which leads out to a main street in the City of Portage, Southport Road. The abutting property owners have no way to get from their properties to Southport Road except by use of Marine Avenue.

In 1941, Kanzler's father, who owned one of the abutting properties, placed a mixture

of cinder and stones on Marine Avenue. Although Marine Avenue is 31.5′ wide, it is not paved to that width. The City of Portage laid asphalt pavement on all of Marine Avenue except the last four-hundred feet, which was paved by abutting landowner Robert Bucko. Portage's trucks use Marine Avenue to provide garbage and mosquito fogging services to the abutting property owners. In the winter, the City of Portage regularly plows snow off Marine Avenue and Zakutansky does so periodically. School buses in the past serviced the full length of Marine Avenue, but now turn around at Zakutansky's lot.

At different times from the 1940's to the 1980's, other abutting property owners have operated small businesses from their homes for short periods of time. Kanzler operated a boat docking service beginning in 1958 and continuing for five to seven years; Bucko's son operated a pre-cast concrete curb business from 1979 to 1988; Bucko's daughter-in-law operated an interior design business from 1981 to 1983; and Joseph Sablotney built the marina that Zakutansky's father now owns in 1929 and operated it into the late 1940's or early 1950's before selling it to others who continued to operate it as a marina. Sablotney later operated a machine shop in the early 1950's for three or four years and a Mr. Polizatto operated a "tuck point" business from the early 1960's to 1968. All of these businesses were open to the public.

On September 19, 1990, Zakutansky filed a petition for an easement protective order to prevent Kanzler from using Marine Avenue for travel to his property for commercial purposes. A hearing was held on October 10, 1990. On November 21, 1990, the trial court found the abutting landowners to have an easement of necessity which could not be expanded to burden Zakutansky's property. The court entered an order restraining Kanzler from using Marine Avenue for commercial purposes. On December 20, 1990, Kanzler filed a motion to correct errors and a motion for relief from the order.

The trial court entered an order on the motion to correct errors, revising the original order. The trial court found that although Zakutansky would prevail as to the protective order, since that was the only relief requested at the October 10, 1990 hearing, the order was too broad and therefore, the trial court set the cause for a hearing on the merits to determine the status of Marine Avenue. Following a change of judge taken by Kanzler, the Honorable Thomas W. Webber, Jr. was named to hear the cause.

On October 18, 1991, a hearing was held in which the parties incorporated the evidence from the October 10, 1990 hearing and submitted additional evidence. On May 8, 1992, the court entered findings of fact and conclusions thereon, which provide in pertinent part:

"1. That both Plaintiff [Zakutansky] and Defendant [Kanzler] have stipulated, in open Court, that this matter was to be submitted to the Court both for the purpose of determining whether or not injunctive relief should be granted, but also for the further purpose of determining whether or not Marine Avenue had, or had not, become a public road.

\* \* \* \* \* \*

3. The strip of land at issue includes a roadway 1600 feet long and 31 feet wide, running in an East–West direction, terminating in a dead end on the West side, and commencing on the East side, at the north end of Marine Street. . . .

4. The strip of land at issue also includes that portion of the roadway which begins at the East end of the strip of land described above at Paragraph two, and which runs in a Southerly direction between that strip of land and connecting the same with Southport Road, a publicly dedicated road, said portion having been used by the Defendant, all of the other abutting landowners, and the general public, to access the property along Marine Avenue. (These two strips will hereinafter be referred to collectively as "Marine Avenue").

5. The 1600 feet by 31 feet portion of Marine Avenue was created by the Defendant's parents, Anna and Henry Kanzler, among others, in 1942.

6. Title to Marine Avenue was purportedly held by William Crumpacker and conveyed from Mr. Crumpacker to David Za-

kutansky in 1990, by way of an executor's deed with no warranties, and subject to Marine Avenue's having became [sic] a public road as long ago as the 1960's.

7. No owners of Marine Avenue, past or present, have ever granted the Defendant or any other user of Marine Avenue any easement or right-of-way, and Marine Avenue has never appeared on any legally recorded plat as an easement or right of way, having any legally recorded plat as an easement or right of way, having begun as a private property at the time of its creation in 1942.

8. Beginning in the 1940's, and until the present, the entire length of Marine Avenue has been used by the following persons in the following manner:

a. The general public has accessed Marine Avenue whenever it has had a desire to traverse the road, ever since the road's creation in the 1942 [sic] until the present.

b. The abutting landowners and their guests for ingress and egress to their property, continuously since the land abutting Marine Avenue was divided and sold into plots beginning in 1942.

 *  *  *  *  *  *

g. Abutting landowner Robert Bucko[,] Jr. and his customers for a preform curb business from 1979–1988.

 *  *  *  *  *  *

9. That the above users are members of the general public concerning their use of Marine Avenue, as they had no property interest in Marine Avenue.

10. The controlling statute is Indiana Code § 8–20–1–15, which governs the creation of public rights-of-ways [sic] on previously private property.

 *  *  *  *  *  *

12. Under Ind.Code § 8-20-1-15, use by the public is the sole test to determine whether a public road has been created.

 *  *  *  *  *  *

14. Under *Pitser v. McCreery,* [ (1909), 172 Ind. 663, 88 N.E. 303] and *Discher v. Clapp [Klapp],* [ (1954), 124 Ind.App. 563, 117 N.E.2d 753], interpreting Ind.Code

§ 8–20–1–15, use for 20 years under the statute vests an indefeasible right in the public to continue to use the road as a public highway, and once vested, the owner of the fee can not [sic] divest the public's interest therein. Vacating of the public interest once created can be accomplished only by the governmental authority having jurisdiction and authority to vacate public roads.

15. Under Ind.Code § 8–20–1–15, to interrupt the 20 years use, the owner of the land must physically stop the public from using the road or resort to judicial proceedings to exclude the public; the mere posting of a sign or ineffective physical barriers are insufficient.

16. At no time from the road's creation until the present has Mr. Zakutansky or the previous owner, Mr. Crumpacker, restrained, by physical means or judicial proceeding, any of the above users or anyone else from traversing Marine Avenue.

 *  *  *  *  *  *

18. 1962 marked the time when Marine Avenue vested a right in the public as a public road, as the twenty years use began in 1942 and continued for 20 years until 1962; and the public use has continued until the present date.

19. In 1988, the Indiana legislature amended Ind.Code § 8–20–1–15, such that the provision allowing for the creation of a public road after 20 years use by the public was deleted.

20. The deletion is not determinative of the present case because Marine Avenue was used by the public for the necessary 20 years; thus, in 1962 Marine Avenue became vested in the public prior to and well before the statute's amendment.

21. Under *State ex rel. Mass. Transp. Auth. v. Indiana Rev. Bd.* [ (1969), 144 Ind.App. 63, 253 N.E.2d 725], the general assembly may not repeal legislation in a manner that impairs vested rights, and therefore the amendment to Ind.Code § 8–20–1–15 may not divest the public its use of Marine Avenue as a public road.

 *  *  *  *  *  *

The Court now enters the following orders:

1. That the Plaintiff has failed to submit evidence sufficient to demonstrate that injunctive relief is warranted, and that, by reason of the foregoing, the Plaintiff's request for a Restraining Order preventing the Defendant's intended use of the roadway is denied.

2. That Marine Avenue as described in paragraphs two and three has become, and now is, a public road because of their historic use while under the operation of Ind.Code § 8–20–1–15, and the abutting landowners, and the public generally, including the Defendant, are entitled to all of the incidences thereto."

Record, pp. 88–95. On July 2, 1993, Zakutansky appealed the trial court's decision to this court.

Zakutansky argues first that certain findings of fact by the trial court are clearly erroneous, rendering the judgment contrary to law. Specifically, Zakutansky contends that Findings # 3, 5, 6, 7, 8(a), 8(b), 8(g), 9, 10, and 12 are clearly erroneous.

■ Zakutansky requested special findings of fact under Indiana Trial Rule 52(A). The scope of review for special findings is well settled: The appellate court may not affirm the trial court's judgment on any ground which the evidence supports, but must determine if the specific findings are adequate to support the trial court's decision. *Orkin Exterminating Company, Inc. v. Walters* (1984), Ind.App., 466 N.E.2d 55, 56, *reh'g denied, trans. denied.*

■ When the trial court has entered special findings, we apply a two-tiered standard of review. First, we must determine whether the evidence supports the findings, and then, we must determine whether the findings support the judgment. Special findings will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, 870, *trans. denied.* "Clearly erroneous" means that, although there is evidence to support the trial court's decision, the record leaves the reviewing court with the firm conviction that a mistake has been made. *Cox v. Cox* (1991), Ind.App., 580 N.E.2d 344, 348, *trans. denied.*

I.

■ Finding # 5 [1] states that "[t]he 1600 feet by 31 feet portion of Marine Avenue was created by the Defendant's parents, Anna and Henry Kanzler, among others, in 1942." Record, p. 89. Zakutansky argues that Finding # 5 is erroneous because Kanzler's parents used Marine Avenue to get to their property before 1942. Finding # 5, however, is supported by the evidence and is consistent with the judgment. Henry Kanzler testified that his parents purchased one of the properties along Marine Avenue in 1941 and lived there from that year until Kanzler inherited the property. When his parents purchased the property, Kanzler saw a map which identified Marine Avenue as an easement. The Kanzlers' deed, however, did not provide for an easement. Until 1941, Marine Avenue had been a private gravel drive. After taking possession of the property, Kanzler's parents, several friends, and Kanzler began making improvements to the roadway by placing a mixture of cinders and stones over the gravel; by 1942, the drive had become a roadway accessible to the public. We therefore find no error with this finding.

■ Finding # 6 states that "Title to Marine Avenue was purportedly held by William Crumpacker and conveyed from Mr. Crumpacker to David Zakutansky in 1990, by way of an executor's deed with no warranties, and subject to Marine Avenue's having became [sic] a public road as long ago as the 1960's." Record, p. 89. Zakutansky argues that finding # 6 is erroneous because Crumpacker did in fact own Marine Avenue at the time he conveyed it to Zakutansky. In his brief, Zakutansky quarrels with the trial court's use of the word "purportedly" to describe Crumpacker's ownership of Marine Avenue. We find this to be a distinction without a difference. Because the trial court's finding is consistent with the judgment, we find no error.

■ Finding # 7 states:

1. The discussion of Finding # 3 follows the discussion of Finding # 12.

"No owners of Marine Avenue, past or present, have ever granted the Defendant or any other user of Marine Avenue any easement or right-of-way, and Marine Avenue has never appeared on any legally recorded plat as an easement or right of way, having any legally recorded plat as an easement or right of way, having begun as a private property at the time of its creation in 1942."

Record, p. 90. Zakutansky argues that the finding is erroneous because the easement arose of necessity when the property was divided. Zakutansky contends that the conveyance by Crumpacker is presumed to have included an easement where access to a public road is not otherwise available. *See Larabee v. Booth* (1984), Ind.App., 463 N.E.2d 487, 492. Finding # 7, however, refers to the granting and recording of an express easement. The grant of an express easement must contain all the formal requisites of a grant of land. *State v. Anderson* (1961), 241 Ind. 184, 170 N.E.2d 812, 813. An easement of necessity, however, is implied by law. *Searcy v. LaGrotte* (1978), 175 Ind.App. 498, 372 N.E.2d 755, 757.

The record shows that Loran Rosenow, an advisory title officer with the title insurance company, testified that he could not find anything of record that would show that Kanzler had an easement. Moreover, Rosenow testified that there was no reservation in the deeds of the abutting property owners specifically giving them the right to use Marine Avenue as an easement. Additionally, Rosenow found that Zakutansky's predecessors in title had not granted an express easement to the abutting landowners.

We therefore find no error with the finding.

■ Findings # 8(a), (b), and (c) state: "Beginning in the 1940's, and until the present, the entire length of Marine Avenue has been used by the following persons in the following manner:

    a. The general public has accessed Marine Avenue whenever it has had a desire to traverse the road, ever since the road's creation in the 1942 [sic] until the present.

    b. The abutting landowners and their guests for ingress and egress to their property, continuously since the land abutting Marine Avenue was divided and sold into plots beginning in 1942.

              *    *    *    *    *    *

    g. Abutting landowner Robert Bucko[,] Jr. and his customers for a preform curb business from 1979–1988."

Record, pp. 90–91. Zakutansky argues first that Finding # 8(a) is erroneous because the public did not use Marine Avenue on a continuous basis over the twenty-year statutory period. Whether the public used Marine Avenue continuously over the statutory time period is inconsequential because frequency of use is unimportant; a road is nonetheless a highway though rarely used. *Fenley Farms, Inc. v. Clark* (1980), Ind.App., 404 N.E.2d 1164, 1170. Furthermore, the fact that the Crumpackers posted "private road" signs at the entrance of Marine Avenue five or six times in the 1950's and 1960's was not sufficient to prevent the property from becoming a public highway. The record shows that no one was ever prevented from using Marine Avenue in spite of the posted signs. The public must be actually and physically excluded. *Spindler v. Toomey* (1953), 232 Ind. 328, 111 N.E.2d 715, 716. We therefore find no error.

■ Zakutansky argues next that Finding # 8(b) is erroneous because a plat was admitted into evidence showing the land to have been divided in the year 1939, rather than 1942. Zakutansky himself, however, testified that the land was subdivided by the Crumpackers in 1942. Thus, the finding is supported by the evidence and the finding is consistent with the judgment.

■ Zakutansky argues next that Finding # 8(g) is erroneous because the evidence shows that Robert Bucko's son only used Bucko's property to store pre-cast curbs and otherwise did not advertise that he had a business on the property or receive customers there. We disagree. The record shows that although he had no business signs on the property, Bucko's son operated a business involving pre-fabricated concrete curbs from 1979 to 1988 on his father's abutting

property. Bucko's son purchased pre-fabricated concrete curbing from a Fort Wayne company and worked as a local distributor. He stockpiled the curbs and kept a lift truck, high lift equipment trailer, flat truck trailer, and a semi-trailer on the property, which were visible to the public.

Zakutansky appears to contend that if Finding # 8(g) is erroneous, Marine Avenue has been abandoned due to lack of use by the public. *See Jeffersonville, Madison, and Indianapolis Railroad Company v. O'Connor* (1871), 37 Ind. 95, 97 (right of the public to use a highway created by statute may be lost by abandonment). However, as we stated earlier, "frequency of use is unimportant and a road is nonetheless a highway though rarely used, if used by those who desire to go that way." *Fenley Farms, supra,* 404 N.E.2d at 1170. The trial court found that other landowners operated businesses from their abutting properties periodically since 1962, which were open to the public. Zakutansky does not challenge these findings. We therefore find no error.

■■■ Finding # 9 states "[t]hat the above users are members of the general public concerning their use of Marine Avenue, as they had no property interest in Marine Avenue." Record, p. 91. Zakutansky argues that the abutting landowners had a property interest in Marine Avenue; therefore, the finding is erroneous. We agree with Zakutansky that the finding is erroneous to the extent that it implies that those who owned lots abutting Marine Avenue had no property interest in Marine Avenue. Those property owners had a property interest in Marine Avenue as an easement of necessity until Marine Avenue became a public highway in 1962. See *McGinnitie v. Silvers* (1906), 167 Ind. 321, 78 N.E. 1013 (property owner had property interest in ingress to and egress from his property which would have been isolated by city's decision to disannex certain property surrounding his land). Kanzler testified, however, that the public has had access to Marine Avenue since 1942. There-

fore, because members of the public in fact used Marine Avenue, we find the error to be harmless.

■■■ Finding # 10 states that "[t]he controlling statute is Indiana Code § 8-20-1-15, which governs the creation of public rights-of-ways [sic] on previously private property." Record, p. 91. Zakutansky argues that Finding # 10 is erroneous because I.C. § 8-20-1-15 is not applicable in this case. Before it was amended in 1988, I.C. § 8-20-1-15 provided, in pertinent part:

"(a) All county highways heretofore laid out according to law, *or used as such for twenty (20) years or more,* shall continue as originally located and as of their original width, respectively, until changed according to law."

I.C. § 8-20-1-15 (West 1976) (emphasis added). The statute includes city streets, such as Marine Avenue. *See Donner v. Griffith* (1919), 71 Ind.App. 693, 122 N.E. 23, 25.

In 1988, I.C. § 8-20-1-15 was amended, deleting the phrase "or used as such for twenty (20) years or more." [2] Zakutansky argues that Kanzler's defense must fail as a matter of law because I.C. § 8-20-1-15 has been amended and no longer provides for the creation of a public highway by use. We disagree. The public had a vested right in Marine Avenue upon its becoming a public highway, which could not be divested by subsequent legislative mandate. *State ex rel. Mass Transp. Auth., supra,* 253 N.E.2d at 730.

Zakutansky argues further that the holding in *Switzer v. Armantrout* (1939), 106 Ind.App. 468, 19 N.E.2d 858 supports his contention that Marine Avenue did not become a public highway under I.C. § 8-20-1-15. In *Switzer,* the plaintiff sought to quiet her title to a private roadway easement located over and upon the defendant's land. 19 N.E.2d at 859. This court held that the private roadway could not have become a public highway either by use for twenty years or by dedication. *Id.* at 860. Howev-

---

2. Indiana Code § 8-20-1-15 now provides: "A county highway right-of-way may not be laid out that is less than twenty (20) feet on each side of the centerline, exclusive of addi-

tional width required for cuts, fills, drainage, and public safety."
I.C. § 8-20-1-15 (West 1988).

er, unlike the instant case, the evidence showed that only the plaintiff and her grantors had used the roadway, and not any members of the public. *Id.* at 859. Therefore, *Switzer* is not persuasive.

We therefore find no error in Finding # 10.

■■■ Finding # 12 states that "[u]nder Ind.Code § 8–20–1–15, use by the public is the sole test to determine whether a public road has been created." Record, p. 91. Zakutansky argues that the finding is contrary to law because the statute is not applicable. We disagree with Zakutansky's contention for the reasons stated in the discussion on Finding # 10. Furthermore, we find no error with Finding # 12 because it is well settled that "use" is the sole test to determine the establishment of a public highway under I.C. § 8–20–1–15. *Fenley, supra,* 404 N.E.2d at 1168–69 (citing *Pitser, supra,* 88 N.E. at 306).

■■■ Finally, Finding # 3 states that the width of Marine Avenue is 31.5 feet. Zakutansky argues that if Marine Avenue is a public highway, then Finding # 3 is erroneous because the evidence established that the width of Marine Avenue, as used, was narrower than the width of 31.5 feet set forth in the legal description. Indiana Code § 8–20–1–15 states that all county highways "shall continue as originally located and as of their original width...." I.C. § 8–20–1–15(a). Zakutansky argues that the evidence shows that the pavement was narrower than 31.5 feet in some places, as narrow as fourteen feet just west of his father's marina, and therefore, the trial court erred by setting the width of Marine Avenue at 31.5 feet.

Zakutansky relies on *Anderson v. City of Huntington* (1907), 40 Ind.App. 130, 81 N.E. 223, in support of his argument that the public highway may not be any width beyond that which was actually used by the public. *Id.* 81 N.E. at 224; *McCreery v. Fallis* (1903), 162 Ind. 255, 67 N.E. 673, 674. In *Anderson,* the court determined that the city could not remove a person's fence and place a sidewalk on his property based upon an alleged road by use where the road had not been used by the public to that width and the public had in fact been excluded from using the road to that width as evidenced by the fence. 81 N.E. at 224. Zakutansky cites further to *Hart v. The Trustees of Bloomfield Township* (1860), 15 Ind. 226, in which the disputed roadway was six or eight feet wide in some places and ten or twelve feet wide in others because it was "bounded on each side by young trees, or bushes from ten to fifteen feet high, and so large that no team could bend them down." *Id.* at 227. The court held that the public had used the highway for the statutory twenty years and "its width at the end of twenty years was its established width." *Id.* In the instant case, however, the public had not been excluded by fences, trees or other means or prevented from using the entire width of 31.5 feet as described in the deed and title policy. There was testimony that Marine Avenue was paved narrower in some areas. Zakutansky, however, presented no evidence to show that the public had been denied use of or had not used the entire width of Marine Avenue, other than to say that the pavement was narrower in some places, as narrow as fourteen feet. The record shows that the policy of title insurance and the Crumpacker/Zakutansky deed set the width of Marine Avenue at 31.5 feet and it is that dimension which the trial court determined to be used by the public. We therefore find no error.

## II.

■■■ Zakutansky argues that Marine Avenue, as an easement created of necessity, may not be terminated by the ripening of Marine Avenue into a public highway. We disagree. An easement of necessity may ripen into a public highway pursuant to I.C. § 8–20–1–15. *See Pitser, supra,* 88 N.E. at 306 ("Under the statute under consideration, and in this kind of proceeding, but one question is presented, and that is, [h]as the road been used as a highway for 20 years? [citation omitted] If it has, the statute fixes its status as a highway...."); *Fenley, supra,* 404 N.E.2d at 1168–69. An easement of necessity is created by implication where there has been a severance of the unity of ownership of a tract or parcel of land in such a way as to leave one part thereof without access to a public road. *Whitt v. Ferris*

84

(1992), Ind.App., 596 N.E.2d 230, 235. An easement of necessity ceases to exist, however, when the necessity out of which the easement arose ceases to exist. *Wilson v. Glascock* (1920), 74 Ind.App. 255, 126 N.E. 231, 233. In the instant case, the easement of necessity was created when Crumpacker divided the property, isolating it from any public road, and failed to provide an express easement in the abutting landowners' deeds or to record Marine Avenue as an express easement. The easement of necessity ceased to exist, however, when Marine Avenue became a public highway in 1962 pursuant to I.C. § 8-20-1-15. Although the property owners of parcels abutting Marine Avenue had an implied easement of necessity until 1962, the record shows that the public began to use Marine Avenue as a public highway in 1942; that is, the abutting landowners' guests and any member of the public who had occasion to use the road. Moreover, the public used Marine Avenue to gain access to the various businesses operated since the 1950's by the abutting landowners and their relatives.

### III.

Finally, Zakutansky argues that declaring Marine Avenue to be a public highway amounts to a taking for which he was not compensated. He argues further that the abutting landowners should be estopped from asserting that Marine Avenue is not an easement. Zakutansky raises these issues for the first time on appeal. A party may not raise on appeal an issue that was not raised in the trial court. *Davidson v. Cincinnati Insurance Co.* (1991), Ind.App., 572 N.E.2d 502, 505. Zakutansky did not argue these issues either in his complaint or by other pleading or motion. Therefore, these issues are waived.

For the reasons stated above, we affirm the judgment of the trial court.

**AFFIRMED.**

KIRSCH and BARTEAU, JJ., concur.