Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 07 2013, 6:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**SCOTT A. WEATHERS**
The Weathers Law Office, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL E. BROWN**
Kightlinger & Gray, LLP
Indianapolis, Indiana

**CRYSTAL G. ROWE**
Kightlinger & Gray, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT WALKE and KAREN WALKE, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-CT-291 |
| | ) | |
| KITLEY LAW OFFICE, P.C., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-1201-CT-3779

**October 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Robert and Karen Walke live on the west side of Wishmeyer Lane across from David and Sandra Comstock. The Comstocks brought a lawsuit against the Walkes seeking to permanently enjoin them from using Wishmeyer Lane, and the Walkes hired Kitley Law Office, P.C., to represent them. The Comstocks prevailed in their lawsuit, and the Walkes were permanently enjoined from using Wishmeyer Lane.

The Walkes hired new counsel and sued Kitley for legal malpractice. Kitley filed a motion for summary judgment, arguing that any malpractice did not cause the Walkes to lose the lawsuit because there were no legal theories upon which they could have prevailed. The trial court granted Kitley's summary judgment motion.

The Walkes appeal the trial court's grant of summary judgment in favor of Kitley. They argue that there is a genuine issue of material fact as to whether they would have prevailed in the underlying lawsuit had Kitley effectively represented them on theories of prescriptive easement and public road. We conclude that the Walkes waived their claim for failure to present a cogent argument. Waiver notwithstanding, we conclude that the Walkes failed to establish that there is a genuine issue of material fact as to whether they would have prevailed in the underlying lawsuit based on theories of prescriptive easement and public road. Therefore, we affirm.

**Facts and Procedural History**

The facts most favorable to the Walkes, the nonmoving parties, are that in 2009, the Walkes hired Kitley to defend them in the underlying lawsuit filed by their neighbors, the

Comstocks, in which the Comstocks sought a permanent injunction preventing the Walkes from using Wishmeyer Lane as a means of ingress and egress. The background facts in the underlying case are that the Walkes and the Comstocks lived in Marion County on the north side of Brookville Road/Highway 52, with Wishmeyer Lane lying between their houses. The Comstocks lived on the east side of Wishmeyer Lane, and the Walkes lived on the west side. Although the Walkes' property fronted Brookville Road, there was no vehicular access to it in 2009, and the Walkes used Wishmeyer Lane to access their driveway.

The Comstocks purchased their home in 1987 or 1988, but that purchase did not include Wishmeyer Lane. Nevertheless, the Comstocks maintained the road, removing snow and cutting the grass around it. In 1991, the Comstocks purchased Wishmeyer Lane by deed. They had a survey performed and recorded to establish the boundaries of their property pursuant to Indiana Code Section 36-2-12-10 (legal surveys). Since that time, the Comstocks have maintained and paid taxes on Wishmeyer Lane. John and Mary Nelson owned the property on the west side of Wishmeyer Lane. They used Wishmeyer Lane with the Comstocks' permission.

In April 1998 or March 2003, the Walkes purchased the Nelsons' property.[1] The Walkes did not claim ownership of Wishmeyer Lane. The Walkes used Wishmeyer Lane with the Comstocks' permission. At some point, the Walkes asked the Comstocks for permission to use the property lying between the Walkes' home and Wishmeyer Lane. The

---

[1] The Walkes' answer and counterclaim stated that they purchased their property in March 2003. However, Karen Walke testified that they purchased it April 1998.

3

Comstocks granted them permission and did not erect a fence around their property. Both the Comstocks and the Walkes mowed the grass in this area.

Two other residents used Wishmeyer Lane to access their property. These residents had dedicated easements to use the road. The Comstocks never gave the Nelsons or the Walkes a recorded easement.

In 2006, the Walkes erected a chain-link fence on the east side of their property. The Walkes petitioned the Indiana Department of Transportation ("INDOT") for permission to construct a driveway from their home to Brookville Road. In August 2008, INDOT denied their request because their property already had access to Brookville Road.

In August 2009, the Comstocks filed a lawsuit against the Walkes, seeking a permanent injunction preventing the Walkes from using Wishmeyer Lane. In July 2010, the trial court in that case concluded that the Comstocks were fee simple title owners of Wishmeyer Lane and that the Walkes had failed to present evidence to establish either a prescriptive easement or an easement of necessity. The trial court permanently enjoined the Walkes from using Wishmeyer Lane, effective thirty days after entry of the judgment.

The Walkes again petitioned INDOT to build a driveway from their house to Brookville Road. INDOT denied their request because the proposed driveway did not meet the required separation distance for Brookville Road. The Walkes dismissed Kitley and hired new counsel. The Walkes filed a motion to correct error in the underlying suit, arguing that their property was landlocked absent the ability to use Wishmeyer Lane, and therefore the judgment regarding the easement of necessity was in error. They also moved to stay

4

enforcement of the injunction until INDOT granted them permission to build a driveway and construction of it was complete. On September 7, 2010, the trial court denied the Walkes' motion to correct error but stayed enforcement of the injunction pending appeal or receipt of permission from INDOT to build a driveway and completion thereof. The Walkes chose not to appeal. Eventually, INDOT gave them permission to build a new driveway. On March 27, 2011, they moved to lift the stay.

On January 30, 2012, the Walkes filed the present legal malpractice lawsuit against Kitley, alleging that its representation of the Walkes in the Comstocks' lawsuit against them fell below the applicable standard of care constituting a breach of duty that proximately caused them to incur damages. Kitley filed its answer and a motion for summary judgment. Kitley argued that it was entitled to summary judgment because the Walkes could not establish that any breach of duty caused their loss in the underlying case; that is, the Walkes could not satisfy the requirements for a prescriptive easement or easement by necessity. Appellants' App. at 18-32.

On December 14, 2012, the Walkes filed their opposition to Kitley's motion for summary judgment, arguing that there was a genuine issue as to whether competent representation would have resulted in judgment in favor of the Walkes based on prescriptive easement or public road theories. *Id.* at 113-17. The Walkes designated an affidavit from attorney Steven K. Huffer, which reads,

> 5. I also performed my own investigation by visiting the subject property, taking photographs, and interviewing a witness, Katherine Wilkerson, age 93, who has resided just south of the subject premises since 1957 and is Mr. Walke's maternal grandmother.

5

6. …. [Wishmeyer Lane] travels North between the properties for perhaps 300 yards, across a railroad track, to which point [it is] paved. North of the railroad track the roadway loses its paved character and continues past a residence on the west side, then doglegs right past a parcel of land where firewood is apparently stored and trucks are parked, and past some old garages or dwellings which have now fallen into disrepair. The photographs I took on my visit to the subject property are attached hereto as Exhibit "C" collectively.

7. … Ms. Wilkerson confirms that Wishmeyer Lane has been so marked since 1957, and that auto traffic has freely used Wishmeyer Lane since that time to access the current Walke parcel and parcels to the North. ….

8. … Wishmeyer Lane at one time accessed a railroad terminal, the building which had been used for [it] in the distant past having apparently burned down in 2003. It also has accessed a trash dump which formerly existed north of the railroad track.

….

12. It is my opinion that as of April 17, 1991, when Mr. Comstock acquired title to the fee of the land which lies under Wishmeyer Lane, the Walkes' right to access their land across Wishmeyer Lane had already vested under either of two legal theories. Either Wishmeyer Lane had become a public road under the principles outlined in [*Fenley Farms v. Clark*, 404 N.E.2d 1164 (Ind. Ct. App. 1980)], or there was an easement by prescription in favor of the Walke parcel as the dominant tenement and with the parcel underlying Wishmeyer Lane as the servient tenement. The use of the land by the Walkes and their predecessors in title, and the public in general, across Wishmeyer [L]ane for the purpose of ingress and egress to U.S. Hwy. 52 had been open and notorious and under claim of right for well in excess of 20 years by April 17, 1991, and a competent attorney representing the Walkes could have established at least a prima facie case of prescriptive easement under the standards set forth in [*Shields v. Taylor*, 976 N.E.2d 1237 (Ind. Ct. App. 2012)].

13. Mr. Comstock took title to the land underlying Wishmeyer Lane subject to the facts and claims a visual inspection would have revealed, and a casual inspection would have revealed a road, marked with a county road sign, which serviced not only the Walke property but additional properties to the north. Mr. Comstock took subject to the rights of others, including the Walkes, to travel across Wishmeyer Lane.

6

14. A reasonably competent attorney handling [the underlying lawsuit] for the Walkes would have presented evidence at the trial court of [the underlying lawsuit] of the public's and the Walkes' and their predecessors' use of Wishmeyer Lane dating back to the 1950s, would have presented as a witness Ms. Wilkerson or someone with a similar history of residence in the nearby vicinity, would have presented aerial photographs and phone directories from the 1950s and 1960s, which could have been authenticated as public records or as a fair and accurate depiction of the area at the time they were taken by anyone who lived in the area at the time (such as Ms. Wilkerson). Photographs similar to the photographs I took could have been authenticated and presented as evidence. A surveyor or real estate attorney could have been called as a witness to explain the title history of the surrounding area. It is my understanding that no such evidence was presented, and the trial court was compelled to find against the Walkes and declare that they had no right of access to Wishmeyer Lane. Had the evidence described above been presented at the trial, it is significantly more likely than not [that] the Walkes would have prevailed.

15. It is also my understanding that the "public road" theory was not pled by [Kitley] and I am of the opinion that such a legal theory would have been advanced by a reasonably competent attorney for the Walkes. I am aware of a 1991 letter from the City of Indianapolis Department of Transportation which indicates that Wishmeyer Lane is not a public road, but this letter is hearsay and on its face is qualified and does not appear to consider all of the compelling evidence to the contrary.

*Id*. at 119-23. Huffer attached aerial photographs of Wishmeyer Lane taken in 1956 and 1962, telephone directories for 1968 and 1970 showing use of Wishmeyer Lane addresses, and Google maps.

On January 2, 2013, Kitley filed a motion to strike certain portions of Huffer's affidavit, which the trial court denied. On March 6, 2012, the trial court granted summary judgment to Kitley. The Walkes appeal.

7

## Discussion and Decision

"Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law." *Quezare v. Byrider Fin., Inc.*, 941 N.E.2d 510, 513 (Ind. Ct. App. 2011), *trans. denied*; Ind. Trial Rule 56(C).

> When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party.

*Kroger Co. v. Plonski*, 930 N.E.2d 1, 4-5 (Ind. 2010) (citations omitted). "In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials." *Kozlowski v. Lake County Plan Comm'n*, 927 N.E.2d 404, 408 (Ind. Ct. App. 2010), *trans. denied*.

> To prove a legal malpractice claim, a plaintiff must establish: 1) employment of the attorney (duty); 2) failure of the attorney to exercise ordinary skill and knowledge (breach); 3) proximate cause (causation); and 4) loss to the plaintiff (damages). It is appropriate for a trial court to grant an attorney summary judgment on a legal malpractice claim if the designated evidence negates at least one of these elements. In Indiana, an attorney's duty is generally to exercise ordinary skill and knowledge.

*Flatow v. Ingalls*, 932 N.E.2d 726, 729 (Ind. Ct. App. 2010), *trans. denied* (2011) (citations and quotation marks omitted).

The trial court granted Kitley's summary judgment motion on the issue of proximate cause. "Proximate cause requires the plaintiff to show at a minimum that the outcome of the

8

underlying litigation would have been more favorable but for the attorney's negligence. Such proof typically requires a trial within a trial." *Id* (citation omitted). Here, the Walkes were required to establish a genuine issue of material fact that but for Kitley's errors in representation, they would have prevailed on theories of prescriptive easement and public road. The Walkes contend that Huffer's affidavit established that there are genuine issues of material fact on the issue of causation under both theories. However, the Walkes merely provide statements of law and reproduce portions of Huffer's affidavit and fail to provide any actual argument as to how the facts support their position in light of the applicable legal principles. Accordingly, they have waived their claim for review. *See Wenzel v. Hopper & Galliher, P.C.*, 830 N.E.2d 996, 1004 (Ind. Ct. App. 2005) (failure to present cogent argument constitutes waiver of issue for appellate review); Ind. Appellate Rule 46(A)(8)(a).

Waiver notwithstanding, the Walkes' claims are without merit. First, Huffer's affidavit did not establish that there is a genuine issue as to whether competent representation on the theory of prescriptive easement would have succeeded. Prescriptive easements "are not favored in the law," and therefore "the party claiming a prescriptive easement must meet stringent requirements." *Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 406 (Ind. 2005) (citations, brackets, and quotation marks omitted). Pursuant to our supreme court's reformulation of the elements of prescriptive easement, to prevail on such a claim, "the claimant must establish clear and convincing proof of (1) control, (2) intent, (3) notice, and

9

(4) duration." *Id.*[2] Further, a prescriptive easement may not be acquired by another person by adverse use unless the use is uninterrupted for at least twenty years. Ind. Code § 32-23-1-1. Use of the land is not adverse if the use was permissive. *Shields*, 976 N.E.2d at 1247.

In his affidavit, Huffer opined that as of April 17, 1991, when the Comstocks acquired title to the land on which Wishmeyer Lane is situated, a prescriptive easement in favor of the Walke parcel had already vested. However, the twenty-year period required to establish a prescriptive easement did not commence against the Comstocks until they acquired title to the land in 1991. *See Downing v. Owens*, 809 N.E.2d 444, 450 n.3 (Ind. Ct. App. 2004) ("[A]n adverse possessor of land, albeit in fee simple or by easement, may not tack the servient owner's knowledge and acquiescence of the possessor's use of the land with that of the owner's predecessor(s)-in-interest's for purposes of proving use of the land for the twenty-year prescriptive period.").

Second, Huffer's affidavit also failed to establish that there is a genuine issue as to whether competent representation on the theory of public road would have prevailed.

> Ind. Code § 8-20-1-15 previously provided that a road could become a public highway if used as such for twenty years or more. That portion of the statute was removed when it was amended in 1988; however, we may still hold that the public accepted a street by usage if the street was used as a public street for twenty years prior to 1988. If the street became a public street before 1988, then the public has a vested right in that street, and the vested right was not eliminated by the amendment of the statute. Under this statute, use is the sole test, though frequency of use or the number or [sic] users is unimportant. It is enough if it is free and common to all who have occasion to use it as a public highway.

[2] Prior to *Wilfong*, a party claiming the existence of a prescriptive easement was required to show "an actual, hostile, open, notorious, continuous, uninterrupted adverse use … under a claim of right." *Wilfong*, 838 N.E.2d at 405.

*Jackson v. Bd. of Comm'rs of Cnty. of Monroe*, 916 N.E.2d 696, 703 (Ind. Ct. App. 2009), (citations and quotation marks omitted), *trans. denied* (2010).

In *Fenley Farms*, upon which Huffer relied in his affidavit, all those who had occasion to use the road included more than the individuals who resided along the road. There, the road led to a ferry landing on the Ohio River, and members of the public used the road to get to the ferry and cross the Ohio River. 404 N.E.2d at 1168. Here, there is no evidence that persons other than those who lived on the road used it. The aerial photographs and Google maps that Huffer submitted with his affidavit merely show that a road existed and continues to exist, not that members of the public used the road. *See Jackson*, 916 N.E.2d at 703 ("The roads appearance on various maps, by itself, shows only that it existed, not that the public used the road."). Likewise, the fact that some property owners had a Wishmeyer Lane address does not show public use of the road. Further, there is insufficient evidence regarding the railroad terminal or trash dump to draw any reasonable inferences regarding how and when Wishmeyer Lane could have been used in conjunction therewith. Finally, Ms. Wilkerson's statement to Huffer regarding the public's use of Wishmeyer Lane merely relates that people used the road to get to the properties adjacent to it. It is unclear how she would know whether or not the previous owner(s) of Wishmeyer Lane had given those property owners permission to use the road.

Accordingly, the Walkes have failed to establish a genuine issue as to whether they would have prevailed on theories of prescriptive easement or public road had Kitley pursued

11

those strategies.  As such, we conclude that the trial court did not err in granting summary judgment in favor of Kitley.

Affirmed.

BARNES, J., and PYLE, J., concur.