Robert AMRHEIN, Appellant–Plaintiff,

v.

Matthew EDEN and Amanda Eden, Appellees–Defendants.

No. 16A01–0201–CV–18.

Court of Appeals of Indiana.

Dec. 18, 2002.

Matthew D. Bailey, Greensburg, IN, Attorney for Appellant.

## OPINION

MATTINGLY–MAY, Judge.

Robert AmRhein appeals the trial court's decision quieting title to a piece of real estate in favor of his neighbors, Matthew and Amanda Eden ("the Edens"). AmRhein raises four issues, which we restate as:

1.  whether the trial court erred in determining there was not a public highway located between AmRhein's and the Edens' properties;

2.  whether the trial court erred when it determined that the public highway had been abandoned;

3.  whether the trial court erred in finding that the Edens acquired the property on their side of the fence by acquiescence to a boundary line and adverse possession; and

4.  whether the trial court erred in denying AmRhein's complaint for ejectment.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

AmRhein and the Edens are neighbors who live outside the town of Letts Corner in Decatur County. AmRhein's property is located both to the south and east of the Edens' property. The parties stipulated to the accuracy of a survey that indicates there is an L-shaped area of land, referred to as the "Alley," that is located between the properties. The Alley is not shown in either of the parties' respective deeds as belonging to either AmRhein or the Edens. According to the survey, the Alley consists of a thirty-foot-wide strip, running

east and west, that lies between the Edens' southern boundary line and AmRhein's northern boundary line,[1] and a fifteen-foot-wide strip, running north and south, that lies between the Edens' and AmRhein's east/west boundary line.

At this point, a review of the history of these properties is helpful. This is not the first time a dispute has arisen concerning the area between these two properties. In 1946, Woods and Ethel Carpenter owned the property that is now owned by the Edens, and Preston and Minnie Johnson owned the property that is now owned by AmRhein. A dispute between the Carpenters and the Johnsons arose concerning the Alley. What is known about that dispute is limited to the trial court's judgment in a suit brought by the Carpenters ("plaintiffs") against the Johnsons ("defendants").[2] That judgment ("the 1946 judgment") is as follows:

> Comes now the parties by counsel and now the court having heretofore heard the evidence and having received and inspected the premises involved in the litigation herein as requested by the defendants, finds for the plaintiffs and against the defendants, that a right of way or alley of the width of fifteen (15) feet exists and has existed for more than twenty (20) years along the entire east side of plaintiff's real estate situated in Decatur County, State of Indiana, and described as follows.
>
> [Legal description of the Carpenters' property]
>
> That a right of way of the width of thirty (30) feet exists and has existed for more than twenty (20) years along the entire south side of said described real estate; that said alley on said east side of said real estate and said right of way on said south side of said real estate has been used as a right of way for more than twenty (20) years; that said plaintiffs, and all other persons are entitled to use the same as a right of way, alley or street; that the plaintiffs are entitled to an injunction perpetually enjoining the defendants from obstructing said right of way and alley and from the commission of the threatened obstruction thereof or from interfering with the free use thereof in any manner.
>
> It is therefore, considered and adjudged by the court that the defendants be and they are hereby perpetually enjoined from the obstructing of said alley and right of way or in any manner interfering with the free use thereof, and that the plaintiffs recover from the defendants their costs herein expended and taxed at $57.70.

(App. at 25–26.)

In 1950, the Carpenters purchased the Johnsons' property, which Ethel Carpenter[3] later sold to AmRhein in 1956. Therefore, between 1950 and 1956 the Carpenters owned both the property now owned by AmRhein and the property owned by the Edens. In 1956, Ethel Carpenter conveyed to AmRhein the land that she and her husband acquired from the Johnsons. At that time, there was a fence line between the properties. AmRhein considered the fence line to be the bound-

---

1. The survey indicates there is another narrow strip of land located between the southern boundary line of the Alley and AmRhein's northern boundary line that is not shown in the parties' respective deeds as belonging to either AmRhein or the Edens. However, it does not appear that the Edens dispute AmRhein's claimed ownership of this other strip.

2. On June 18, 1946, the Decatur Circuit Court entered its judgment in *Carpenter v. Johnson*, cause no. 15930, which was entered in Civil Order Book 73 page 645.

3. Ethel's husband, Woods, died in 1953.

ary line of his property and has since maintained the fence and farmed up to the fence.

According to the survey, the fence is located in the Alley approximately three feet to the north of the Alley's southern boundary line and three feet to the west of the Alley's eastern boundary line. Therefore, the fence line is located approximately twenty-seven feet south of the Edens' southern boundary line and approximately twelve feet to the east of the Edens' eastern boundary line.

AmRhein considered the area along the outside of the fence to be the Alley as described in the 1946 judgment. Although the Alley is not AmRhein's only means of access to his property, he has used it as a convenient way to access his property to check on his crops and livestock and as a way to avoid the highway. AmRhein has traveled the Alley approximately twelve times a year on a tractor or a motorcycle. AmRhein's son, Steven, has walked the alley and used it in a similar manner as AmRhein.

In 1986, Matt Eden's parents, Mark and Marsha Eden, purchased from Ethel Carpenter the property that was described in the 1946 judgment as being the Carpenters'. Mark Eden considered the fence line to be the boundary line of his property and was unaware of the existence of the Alley. Mark Eden has since tended the grass up to the fence line. In early April of 1998, Mark and Marsha Eden were in the process of conveying the southern portion of their property to the Edens as a place for the Edens to construct a modular home.

On April 7, 1998, Eddie Badgley, who was at that time an Environmental Health Specialist for Decatur County, met with Mark Eden and AmRhein to discuss the location of the septic system for the planned modular home. Badgley wanted AmRhein's permission to run a portion of the proposed septic system onto the area north of the east/west fence line, which he assumed was owned by AmRhein.[4] However, AmRhein informed Badgley and Mark Eden that the area north of the fence was part of what he considered to be the Alley. A portion of the septic system was subsequently located within the Alley, but no part of it was within ten feet of the fence line.

On April 27, 1998, Mark and Marsha Eden conveyed the southern portion of their property to the Edens. That fall a modular home was constructed. The home and its wooden deck encroach into the thirty-foot-wide portion of the Alley by 3.4 feet and 8.6 feet respectively. The home and its wooden deck, however, do not extend onto the half of the Alley that AmRhein wants the Edens to be ejected from. The Edens also located a gravel driveway in the Alley. In the spring of 1999, Matthew Eden and AmRhein had a dispute concerning AmRhein's use of the Alley.

On August 16, 1999, the Edens, along with Mark and Marsha Eden, filed with the Decatur County Board of Commissioners ("County Board") a Petition to Vacate Public Ways pursuant to Ind.Code § 36–7–3–12 to vacate the Alley. After a hearing on September 20, 1999, the County Board issued Ordinance number 1999–7, vacating the public way as it was described in the

---

**4.** Badgley's assumption that AmRhein owned an area north of the fence was due to his reliance upon an aerial map of Mark and Marsha Edens' property obtained from the County Auditor's office that indicated that their south property line was north of the fence.

1946 judgment.[5]

On October 20, 1999, AmRhein filed his Complaint and Remonstrance against the County Board alleging that it had improperly granted the Petition to Vacate Public Ways. On August 29, 2000, AmRhein filed a Complaint for Ejectment against the Edens[6] seeking to eject the Edens from one half of the vacated public way. On October 18, 2000, the Edens asserted the affirmative defenses of laches and estoppel and filed a cross-complaint alleging trespass and seeking a declaratory judgment finding that the Edens were entitled to the benefits of the injunction provided for in the 1946 judgment. AmRhein's suits against the County Board and the Edens were consolidated on February 2, 2001. On August 31, 2001, the Edens amended their cross-complaint seeking to quiet title to the Alley pursuant to theories of adverse possession and/or acquiescence. A trial was held on November 5, 2001 and November 8, 2001. Also on November 8, 2001, without objection from AmRhein, the trial court dismissed AmRhein's Complaint and Remonstrance against the County Board.[7]

On December 12, 2001, the trial court entered judgment in favor of the Edens, awarding them ownership of the Alley up to the fence line. At the request of the Edens, the trial court entered the following findings of fact and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Plaintiff Robert AmRhein's Complaint herein seeks to have defendants Matthew Eden and Amanda Eden ejected from what plaintiff Robert AmRhein alleges to be a vacated public-way.

2. The public-way subject of plaintiff Robert AmRhein's Complaint is entirely outside of the Town of Letts Corner (Joint Exhibit/Stipulation 2, the original plat of the Town of Letts Corner April 3, 1883).

3. Plaintiff Robert AmRhein presented no evidence that the alleged public-way subject of his Complaint was ever established by any duly constituted body, specifically, the Board of Commissioners of Decatur County, Indiana.

4. Plaintiff Robert AmRhein failed to present any evidence of the establishment of a public-way by use; the only use alleged was an occasional use by plaintiff; there was evidence that even some of the use alleged by plaintiff was only after seeking defendant's, defendant's father's or defendant's uncle's permission.

5. The only basis for the alleged existence of the public-way subject of plaintiff Robert AmRhein's Complaint was this Court's Judgment in *Woods Carpenter and Ethel Carpenter v. Preston Johnson and Minnie Johnson* in Cause Number 15930 found in Civil Order Book 73 at page 645, dated June 18, 1946 (Joint Exhibit/Stipulation 5).

6. Said 1946 Judgment in *Woods Carpenter and Ethel Carpenter v. Preston Johnson and Minnie Johnson* refers to a "right-of-way," "alley" or "street" that, at that time of said Judg-

---

5. The County Board divided the vacated public way in half between AmRhein and the Edens for assessment purposes.

6. We note that AmRhein did not include Mark and Marsha Eden in this suit.

7. AmRhein no longer challenged the County Board's vacating the Alley as a public way. Instead, it was AmRhein's position that the Alley, having been vacated as a public way on petition by the Edens, should be divided equally between AmRhein and the Edens as the adjoining landowners.

ment, had been used, (although said Judgment doesn't say by whom), for more than 20 years.

7. Said 1946 Judgment describes the "right-of-way," "alley" or "street" referred to therein as being 30 feet in width along the entire south side of plaintiffs therein Woods Carpenter and Ethel Carpenter's property, and 15 feet along the entire east side of said plaintiffs' property. The 1946 Judgment enjoins defendants therein from obstructing said "right-of-way," "alley" or "street."

8. By Joint Exhibit/Stipulation 5, the parties in the case at bar stipulated that to their knowledge, the remaining portion of the Court's file in Cause Number 15930, (the 1946 cause), has become lost. This Court, therefore, has no way of ascertaining the original or exact nature of the "right-of-way," "alley" or "street" referred to in the 1946 Judgment. (It could have also been an easement under what is now I.C. 32–5–1–1).

9. In 1950, subsequent to said 1946 Judgment of this Court in Cause Number 15930, Ethel Carpenter and Woods Carpenter became owners of all real estate on the north and south and east and west, in other words, on both sides, of the "right-of-way," "alley" or "street" referred to in said 1946 Judgment (Joint Exhibit/Stipulation 8).

10. Plaintiff offered no evidence indicating that said alleged public-way extended beyond those lands owned by Ethel Carpenter and Woods Carpenter on the north and south and east and west of said public-way.

11. The evidence is uncontroverted that sometime during the ownership of all lands adjoining said "right-of-way," "alley" or "street" by Ethel Carpenter and Woods Carpenter, subsequent to 1950 and plaintiff Robert AmRhein's ac-

quisition in 1956 of land presently owned by him, a line fence (woven wire and wooden posts) was constructed in said "right-of-way," "alley" or "street" running the entire length of said "right-of-way," "alley" or "street," thereby dividing said "right-of-way," "alley" or "street" into two separate parts along the entirety of said "right-of-way," "alley" or "street."

12. The testimony of Robert AmRhein (and others) establishes that since he acquired his property in 1956 from the parties' predecessors in title, Woods Carpenter and Ethel Carpenter, the parties to this action and their predecessors in title have continuously used and occupied their property subject of this action up to said fences.

13. That the evidence further shows that the parties' and their successors' in title use of their respective real estate up to said fence was in a manner consistent with said real estate's normal purposes; there is no evidence that the present parties or their successors in title recognized that their ownership was subservient to their neighbor's title, nor did they ever acknowledge a lack of legal right to possession of the real estate.

14. The defendants, Matthew Eden and Amanda Eden, asserted the defense of laches. The evidence establishes that in April, 1998, plaintiff Robert AmRhein was clearly aware of defendants Matthew Eden's and Amanda Eden's plans to construct a home and septic system, including a leach field and finger system, within what plaintiff Robert AmRhein alleges to be a public-way or vacated public-way and, further, plaintiff Robert AmRhein was aware of the actual construction of said home and septic system by Matthew Eden and Amanda Eden beginning in September or October,

1998. Robert AmRhein did not file this suit or otherwise exercise any legal right he may have had to prevent said construction until August, 2000—more than 20 months after the completion of construction by defendants Matthew Eden and Amanda Eden.

15. The Court finds that plaintiff's actual knowledge of said defendants' intentions to undertake said construction, the actual construction and his failure to act upon that, to the detriment of defendants, constitutes laches (Building Permit September 9, 1998, Defendants Exhibit D–I).

16. That defendants/cross-complainants, Matthew Eden and Amanda Eden, have filed herein their Complaint to Quiet Title, Establish by Adverse Possession and Acquiescence to that real estate between the real estate described in defendants' Cross Complaints and the fence dividing the lands of the parties to this action.

17. The Court further finds that said fence has been acquiesced in, acted upon and the premises improved up to the line by the parties hereto and their predecessors in title for a continuous period of more than 20 years, and that, therefore, said fence has become binding as the true line between the parties, and defendants Matthew Eden's and Amanda Eden's Cross–Complaint to Quiet Title should be granted (Photographic evidence, including aerial photographs and witness testimony).

## CONCLUSIONS OF LAW

The Court now concludes as a matter of law that:

1. Plaintiff Robert AmRhein has failed to prove by a preponderance of the evidence the existence of the public-way alleged in and subject of plaintiff Robert AmRhein's Complaint.

2. The preponderance of the evidence establishes that plaintiff Robert AmRhein is barred by the doctrine of laches from asserting a public-way and his right to the use thereof.

3. The acquisition by a single owner, to-wit: Woods Carpenter and Ethel Carpenter, of all lands surrounding said alleged "right-of-way," and division by a fence down the approximate middle thereof, for more than 40 years, acted to extinguish any "right-of-way."

4. The actions of unknown parties in erecting and maintaining a fence along the entire length thereof and the subsequent acquiescence in said fence by the parties hereto and their predecessors in title for a continuous period of more than 20 years has established said fence as the true line between the parties to this action.

5. Additionally, the evidence supports the conclusion that the parties have acquired title to the real estate extending to the fence by adverse possession.

(Br. of Appellant at 22–26.) The trial court then denied AmRhein's complaint for ejectment and granted the Edens' cross complaint to quiet title by acquiescence and adverse possession.

## STANDARD OF REVIEW

■■■ At the outset, we note that the Edens did not submit an appellee's brief. In such a situation, we do not undertake the burden of developing arguments for the appellee. Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if the appellant can establish *prima facie* error. *Johnson County Rural Elec. Membership Corp. v. Burnell,* 484 N.E.2d 989, 991 (Ind.Ct.App.1985). *Prima facie,* in this context, is defined as "at first sight, on first appearance, or on

the face of it." *Id.* The purpose of this rule is not to benefit the appellant. Rather, it is intended to relieve this court of the burden of controverting the arguments advanced for reversal where this burden rests with the appellee. *Id.* Where an appellant is unable to meet that burden, we will affirm. *Blair v. Emmert,* 495 N.E.2d 769, 771 (Ind.Ct.App.1986), *trans. denied.*

■■■ When findings of fact and conclusions of law are entered by the trial court, as occurred here, we will not set aside the judgment unless it is clearly erroneous; that is, unless we are definitely and firmly convinced the trial court committed error. The findings must disclose a valid basis for the legal result reached in the judgment, and evidence at trial must support each of the specific findings. We defer to the trial court when such evidence conflicts. We will not reweigh the evidence nor reassess the credibility of the witnesses before the court. Rather, we will affirm if there is sufficient evidence of probative value to support the decision, viewing the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. *Speed v. Old Fort Supply Co., Inc.,* 737 N.E.2d 1217, 1219 (Ind.Ct.App.2000), *reh'g denied.* To the extent that the judgment is based on erroneous findings, those findings are superfluous and are not fatal to the judgment if the remaining valid findings and conclusions support the judgment. *Williams v. Rogier,* 611 N.E.2d 189, 196 (Ind.Ct.App.1993), *trans. denied.*

■■■ Conclusions of law, however, are reviewed *de novo. Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002), *reh'g denied.*

A "clearly erroneous" judgment can result from application of the wrong legal standard to properly-found facts, and in that situation we do not defer to the trial court. We are not bound by the trial

court's characterization of its results as "findings of fact" or "conclusions of law." Rather, we look past these labels to the substance of the judgment and will review a legal conclusion as such even if the judgment wrongly classifies it as a finding of fact.

*Id.* (quoting *State v. Van Cleave,* 674 N.E.2d 1293, 1296 (Ind.1996)). This court may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind. 1998).

## DISCUSSION AND DECISION

AmRhein argues on appeal that the Alley was a public highway created by user until vacated by the County Board in September of 1999, and as such should be divided equally between AmRhein and the Edens as the adjoining landowners.

### 1. *Existence of a Public Highway*

■■■ AmRhein argues that the trial court erred in determining that the 1946 judgment did not find that the Alley was a public highway that had been created by user. The law in effect at the time of the 1946 judgment, section 15 of the 1905 Highway Act, 1905 Ind. Acts 167, § 15 (later Ind.Code § 8–20–1–15), provided in pertinent part that: "All highways heretofore laid out according to law, or used as such for twenty years or more, shall continue as located and as of their original width, respectively, until changed according to law." Our supreme court in *McHenry v. Foutty,* 223 Ind. 335, 60 N.E.2d 781, 783 (1945), summarized the law in effect at the time as follows:

In considering whether or not a road was established by user for more than twenty years, it has been said by this court in *Cozy Home Realty Co. v. Ralston,* 1938, 214 Ind. 149, 151, 14 N.E.2d 917, 918, that:

"Use is the sole test, though frequency of use or the number of users is unimportant. It is enough if it is free and common to all who have occasion to use it as a public highway."

In *Brown v. Brown*, 581 N.E.2d 1260, 1263 (Ind.Ct.App.1991), this court examined the proper construction of a judgment.

When construing the language of a judgment, the reviewing court will attempt to read all of the provisions thereof so as to render them all effective. In construction of a judgment, the reviewing court may look at the entire record, including but not limited to the complaint, findings, argument, and evidence, to ascertain its meaning and effect. Judgments should be liberally construed so as to make them serviceable instead of useless, and necessary legal implications are included though not expressed in terms.

(citations omitted).

Although we do not have the benefit of the entire record concerning the 1946 judgment, its meaning and effect can be construed from the language contained in the judgment itself. The 1946 judgment uses the terms "right of way" and "alley" to initially describe the fifteen-foot-wide strip that runs north and south, and uses the term "right of way" to initially describe the thirty-foot-wide strip that runs east and west. (App. at 25.) The 1946 judgment goes on to state that the two strips have been used as a right of way for more than twenty years and "that said plaintiffs [Carpenters], and all other persons are entitled to use the same as a right of way, alley or street." (*Id.*) The judgment then perpetually enjoins the Johnsons from obstructing or interfering with the free use of the two strips.

Despite not explicitly stating that the Alley was a public highway created by user, that is the legal implication of finding that "all other persons are entitled to use [it] as a right of way, alley or street." If the right of way over the Alley was not meant to be public in nature, then the judgment would not have stated that all others are entitled to use it, and would not have referred to it as a street. Otherwise, this language contained in 1946 judgment would be rendered meaningless. Therefore, we find that the 1946 judgment established the Alley as a public highway created by user. Moreover, the County Board's vacation of the Alley as a public way further suggests the 1946 judgment established the Alley as a public highway.

2. *Abandonment*

■■■■■ The public's right to use a public highway established by public use may be lost by abandonment. *Fenley Farms, Inc. v. Clark*, 404 N.E.2d 1164, 1167 (Ind. Ct.App.1980). Public use is the sole test in determining whether a highway has been abandoned. *Id.* at 1170.

The public use necessary to prevent abandonment is merely use by those who have occasion to use the highway. The fact that a highway is rarely if ever used by persons other than landowners makes it nonetheless a public road. If the road is open only on one end, as here, and if it goes only to one property, it is still a public road. A road may be a public highway although it is of no great length and terminates on private property.

*Id.* (citations omitted).

■■■ AmRhein asserts that the trial court's conclusion of law number three presumably held that the Alley as a public highway had been abandoned. Conclusion of law number three states: "The acquisition by a single owner, to wit: Woods Carpenter and Ethel Carpenter, of all

lands surrounding said alleged 'right-of way,' and division by a fence down the approximate middle thereof, for more than 40 years, acted to extinguish any 'right-of-way.' " (Br. of Appellant at 26.)

AmRhein argues that the trial court applied the wrong legal standard in determining that the Alley had been abandoned because public use is the sole test.[8] It does not appear that the trial court's conclusion that the right-of-way had been extinguished was based on an evaluation of the public use of the Alley. That the land on both sides of a public way was at one time under common ownership and there has been a fence dividing the public way for forty years do not in and of themselves indicate that the public no longer used the way. In fact, the testimony was that AmRhein continued to make use of the Alley outside the fence line. Accordingly, AmRhein has made a *prima facie* showing that the trial court's conclusion of law number three does not support a conclu-

sion that the Alley was abandoned as a public way.

### 3. *Acquiescence and Adverse Possession*

AmRhein argues the trial court erred in awarding the Edens ownership of the Alley on the Edens' side of the fence based upon theories of acquiescence to a boundary line and adverse possession. "There can be no such thing as a permanent rightful private possession of a public street." *Wolfe v. Town of Sullivan,* 133 Ind. 331, 32 N.E. 1017, 1019 (1893). Since the Alley was a public way until vacated as such in 1999, its ownership could not have been acquired prior to that time by the adjoining landowners through acquiescence or adverse possession.[9]

### 4. *Ejectment*

AmRhein argues the trial court erred in denying his complaint to

---

8. AmRhein also disputes the trial court's finding that the Carpenters owned all lands surrounding the Alley and that the fence lies in the approximate middle of the Alley. Although AmRhein may be correct that the Carpenters' land did not completely surround the Alley and that the fence is not in the center of the Alley, the accuracy of these findings would appear to be irrelevant since AmRhein maintains that use is the sole test regarding abandonment.

9. The trial court also concluded that AmRhein was barred from asserting the Alley was a public way due to the equitable doctrine of laches. This conclusion was based on AmRhein's knowledge of the Edens' plans to construct a modular home and septic system on a portion of the Alley and his failure to file his suit against the Edens until twenty months later. AmRhein argues that laches does not apply in assertion of rights concerning a public way. Laches is an implied waiver resulting from knowing acquiescence in existing conditions and an inexcusable delay in asserting a right, which results in prejudice to the adverse party. *Williams,* 611 N.E.2d at 196.

Even if the doctrine of laches applies to public ways, the elements of laches are not present in this case. Primarily, there is no evidence that AmRhein delayed in asserting his rights concerning the Alley. AmRhein informed the Edens prior to their construction of the modular home and septic system that he considered the strips of land along the Edens' side of the fence to be a public way. AmRhein continued to use the Alley, as the construction of the modular home and the septic system on a portion of the Alley did not obstruct his use of the Alley. AmRhein's use of the Alley continued until the confrontation with Matthew Eden in the spring of 1999. AmRhein then began attending County Board meetings in an effort to enforce his right to use the Alley. After learning of this, the Edens and Mark and Marsha Eden filed a petition to vacate the public way, which the County Board granted. AmRhein appealed the County Board's decision to the trial court and in August of 2000, filed a complaint to eject the Edens from half of the Alley. The trial court erred in finding that the doctrine of laches barred AmRhein from asserting his rights in regard to the Alley.

eject the Edens from half of the Alley. "Generally speaking when a street or highway is vacated or abandoned the title to the land reverts to the abutting property owners." *Gorby v. McEndarfer,* 135 Ind. App. 74, 191 N.E.2d 786, 791 (1963). This rule is based upon the presumption that the abutting landowners own to the center of the street or highway subject only to an easement of the public to use the street or highway. *Id.* The Edens have not favored us with any argument as to why the general presumptions should not apply in this case. Accordingly, we find that once the Alley was vacated as a public way in 1999, the title to the Alley reverted to AmRhein and the Edens as the abutting landowners. As such, AmRhein and the Edens are each entitled to their respective halves of the Alley. AmRhein has established a *prima facie* case of error. We remand with instructions that the trial court quiet title to half of the vacated public way in favor of AmRhein.

Reversed and remanded.

RILEY and VAIDIK, JJ., concur.