**FILED**

Jul 06 2020, 8:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

James Bopp, Jr.
Corrine L. Youngs
Amanda L. Narog
The Bopp Law Firm, PC
Terre Haute, Indiana

ATTORNEYS FOR APPELLEES

Paul L. Jefferson
Bradley J. Buchheit
McNeelyLaw, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

The Bopp Law Firm, PC,

*Appellant-Plaintiff,*

v.

Schock for Congress and
Aaron Schock,

*Appellees-Defendants*

July 6, 2020

Court of Appeals Case No.
19A-CC-2421

Appeal from the Vigo Superior
Court

The Honorable Sarah K. Mullican,
Judge

Trial Court Cause No.
84D03-1608-CC-4967

**Baker, Judge.**

[1] The Bopp Law Firm, PC (Law Firm), appeals the trial court's order ruling in favor of Schock for Congress (SFC) and Aaron Schock on the Law Firm's complaint stemming from unpaid legal bills. Finding that the trial court did not err by concluding that the Law Firm failed to meet its burden of proof, we affirm.

# Facts[1]

[2] Schock was a representative to the United States Congress for the 18th Congressional District of Illinois. He was elected in 2008 and reelected in every term through 2014. In March 2015, Schock resigned during a federal investigation of alleged campaign finance violations.[2]

[3] SFC was formed in 2007. In 2015, SFC signed an engagement letter with the Law Firm (the Contract). The Contract was between SFC, referred to as "Client," and the Law Firm, and indicated that SFC was hiring the Law Firm to represent it during the ongoing federal investigation. Appellant's App. Vol. II p. 58. According to the Contract, SFC would pay the Law Firm's "usual and customary hourly rates" for James Bopp, Jr. (Bopp), at $790 per hour, and Randy Elf, at $550 per hour. *Id.* With respect to payment, the Contract stated that all statements were due and payable within thirty days of receipt and that

[1] We held a virtual oral argument in this case on June 23, 2020. We thank counsel for both parties for their advocacy and participation.

[2] The charges against Schock were ultimately dropped and SFC pleaded guilty to a misdemeanor.

interest accruing at 1.5% per month would be applied to past due accounts until paid. The Contract was signed by Paul Kilgore[3] on behalf of SFC and by Bopp on behalf of the Law Firm.

[4] During the course of the Law Firm's representation of SFC, the Law Firm also provided legal services to other, separate (though affiliated) legal entities, including Kilgore, Michael Goode, and Randy Reeves in their individual capacities, PDS, and four other Schock-related campaign committees. None of these individuals or entities had signed engagement letters with the Law Firm, and the Law Firm billed all of this work to SFC. The way in which the Law Firm structured its bills meant that there is no way to separate the work done for SFC from the work done for these other entities and individuals.

[5] In April 2015, the Department of Justice (DOJ) served document subpoenas on SFC, which relayed the subpoenas to the Law Firm. The Law Firm proceeded to review SFC's documents for privilege and responsiveness, and in May 2015, sent the first production of documents to the DOJ. Over the ensuing months, the Law Firm continued to obtain and review extensive documents for SFC and then produced the reviewed documents to the DOJ.

[6] Possibly in part because of the Law Firm's failure to timely produce responsive documents, on June 4, 2015, the Federal Bureau of Investigation (FBI) executed a search warrant on the SFC's campaign office in Peoria, Illinois.

---

[3] Kilgore, through his company, Professional Data Services, Inc. (PDS), served as SFC's treasurer.

Schock concluded that after the search warrant was executed, the Law Firm's role for which it was hired—to respond to the subpoenas—had concluded. But SFC did not communicate that determination to the Law Firm, which continued to provide legal services to SFC until September 1, 2015, when the Law Firm's representation was officially terminated in an email to Bopp.

[7] At some point, Karen Haney, a full-time SFC employee, became concerned about the work being provided by the Law Firm as well as its billing practices. She specifically raised questions about attorney Elf's billing practices, noting that on one occasion, he billed for three days of work in June 2015 at the SFC campaign office but was only seen in the office once for about three hours. When the Law Firm questioned Elf about the concerns, he resigned on the spot, but the Law Firm did not inform SFC. The Law Firm adjusted the bills for the one instance raised by Haney but did not write off his time or otherwise review Elf's work or invoices.

[8] Another role of the Law Firm was as trustee of SFC's finances. As part of this role, the Law Firm acted as gatekeeper to approve payment of SFC's bills. At some point, SFC became aware that the Law Firm frequently and quickly approved the payments of its own bills, but dragged its feet with respect to payment of other vendors' bills. Bopp became angry when he learned that his own approval for payment of the Law Firm's fees was no longer sufficient and that SFC had established a process regarding payment. Bopp demanded information about the process and alleged that SFC's payments to the Law

Firm were ninety days past due, leading to the following response from Haney on August 26, 2015:

> I have a July 23 bill from you received on July 30. I also have an August 14 bill received August 18, 2015. Today is August 26.
>
> July 30 to August 26 or even June 23 to Aug 26 is not 90 days past due. That is, unless, you are using when the work was performed not when we received the bill as the 90 day guide. In which case, you haven't had the same standard for us paying many other attorney bills (see below).
>
> Yes, I received your repeated email inquiries (and responded to some though not all because you charge for every email you read and send) regarding your firm being paid. I got emails from you on July 30, August 7, August 10, August 14 and August 18. I appreciate your persistence.
>
> There are legitimate questions regarding your current bill(s) especially in light of the fact that we were double billed by your firm four times on the June Invoice to the tune of $3,000.
>
> –Meanwhile, I did not receive authorization from you to pay [other attorneys'] bills from June and July until Aug. 18.
>
> Additionally, [another] April bill dated May 7 received by you on May 18 was not authorized for payment by you for a full month later on June 23.
>
> Another [attorney] bill submitted on July 10 to you for June work was not approved for payment by you until a month later on Aug. 11.

Further, [other attorneys'] April and May bills were not approved for payment until June 23. When [one of those attorneys] inquired about payment you said, "Sorry about the delay but we had some issues to work out."

Retainer request for [another business] on May 1 was not approved until 45 days later on June 16.

Etc.

Appellant's App. Vol. II p. 176-77.

[9]     On August 5, 2016, the Law Firm filed a complaint against SFC and Schock. The complaint alleged that SFC had failed to pay for the Law Firm's legal services in June through September 2015, that SFC owed $159,946.37 plus interest, that Schock was personally liable for SFC's obligations, and that the basis of these claims was breach of contract. Appellees' App. Vol. II p. 3. A four-day bench trial took place on February 6 and 8, March 27, and May 10, 2019.

[10]     At the trial, SFC called an expert witness, Ray Biederman, to testify about the cost of document production. Biederman testified that the document production could have been done for $49-$125 per hour, as opposed to the $550-$790 per hour charged by the Law Firm. Biederman testified that his company could have responded to the subpoenas within two weeks for less than $30,000. The Law Firm took months—so long that the FBI ended up obtaining and executing a search warrant—and charged over $90,000 for that work.

[11]     On September 12, 2019, the trial court entered an order finding in favor of SFC and Schock. In pertinent part, it found and concluded as follows:

> 13.     The Firm performed legal services, throughout the scope of its representation for SFC, for the other legal entities as well as work for individuals related to the campaign. . . . Each of these is a separate individual or legal entity. The individuals worked for entities other than SFC. The work performed for other entities and individuals other than SFC is impossible to ascertain because it is not specifically itemized in the Firm's invoices for services rendered. The fees for the legal services performed only for SFC are impossible to ascertain from the Firm's invoices admitted into evidence in the Firm's case in chief.

> ***

> 22.     Aaron Schock . . . is liable for obligations incurred by SFC to which he consented.

> ***

> 26.     The Court finds that the Firm's invoices did not itemize or separate which work was performed for each legal entity or individual. No consents were obtained from any entities or individuals. Because the Firm's invoices make no distinction regarding the work performed for SFC, other committees or individuals, the Court finds the Firm may not recover any fees from anyone other than its client, and is limited to recovering fees for only the work performed for the single client it represented.

> ***

28.     The Firm responded to routine document subpoenas but failed to timely produce documents which ultimately led to the execution of a search warrant on [the] SFC campaign office. At trial, [SFC] presented the testimony of Ray Biederman, an Indiana attorney and an expert on document production. Mr. Biederman is an industry leader on document production and has testified as an expert on this issue previously. Mr. Biederman testified that he had reviewed the grand jury subpoenas in this case and that in his opinion, the subpoenas were routine in nature. Mr. Biederman further testified that his company, Proteus, which was in existence in 2015, could adequately respond to such subpoenas within two weeks at a cost of no more than $30,000. The Court finds that testimony of Mr. Biederman to be informative and convincing.

29.     The testimony at trial was that Randy Elf had submitted inaccurate or questionable billing records for the work performed for SFC. When Randy Elf was confronted by the Firm over this issue, he simply resigned. The Firm never informed its client, SFC, of this issue. Instead, the Firm simply adjusted the amount on its invoices by fifty (50%) percent. The Firm had an obligation to review Randy Elf's billable hours to SFC. Because the Firm failed to do so, the Court will not allow the Firm to recover legal fees billed by Randy Elf for work he completed for SFC.

30.     The Firm called Jeffrey Gallant, an associate of the Firm, as a rebuttal witness at trial on the issue of document production and the reasonableness of the Firm's legal fees in this matter. Mr. Gallant testified that document production and review does not constitute a large percentage of his current legal practice. . . . [T]he Court gives Mr. Gallant's testimony little weight in light of Mr.

Gallant's minimal experience on document review and production.

31.    The Court finds that the Firm has failed to rebut the testimony of Ray Biederman . . . on the issue of the reasonable value of the legal services performed in this matter. The Court finds the evidence reveals that the reasonable value of the legal services performed in this matter are [sic] $30,000. The Firm was paid approximately $94,262.38 as compensation for its representation of SFC. Accordingly, the Court enters judgment for [Schock and SFC].

Appealed Order p. 2-5. The Law Firm now appeals.

# Discussion and Decision

[12]    The Law Firm spends much of its brief addressing a claim—account stated— that it did not actually make to the trial court until after the trial was concluded. It spends the rest of its brief trying to frame the trial court's orders incorrectly. What we must determine, simply, is whether the trial court erred by ruling in favor of Schock and SFC on the Law Firm's complaint for breach of contract.

[13]    In ruling against the Law Firm on its breach of contract complaint, the trial court entered findings of fact and conclusions of law. As such, our standard of review is as follows:

When findings of fact and conclusions of law are entered by the trial court, as occurred here, we will not set aside the judgment unless it is clearly erroneous; that is, unless we are definitely and firmly convinced the trial court committed error. The findings must disclose a valid basis for the legal result reached in the

judgment, and evidence at trial must support each of the specific findings. We defer to the trial court when such evidence conflicts. We will not reweigh the evidence nor reassess the credibility of the witnesses before the court. Rather, we will affirm if there is sufficient evidence of probative value to support the decision, viewing the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. To the extent that the judgment is based on erroneous findings, those findings are superfluous and are not fatal to the judgment if the remaining valid findings and conclusions support the judgment.

*AmRhein v. Eden*, 779 N.E.2d 1197, 1206 (Ind. Ct. App. 2002) (internal citation omitted). We apply a de novo standard of review to the trial court's conclusions of law. *Id.*

### Account Stated

[14] The Law Firm spends the first fourteen pages of its argument discussing a claim for account stated.[4] Appellant's Br. p. 14-28. The problem, however, is that the complaint did *not* include such a claim; indeed, it explicitly raised only a claim for breach of contract.[5] Furthermore, at no point during the litigation of the complaint, including the trial itself, did the Law Firm inject this issue into the

---

[4] Waiver aside, we note that it is uncertain whether the law of account stated even applies to agreements between lawyers and their clients. *Thrasher, Buschmann, & Voelkel, P.C. v. Adpoint Inc.*, 24 N.E.3d 487, 499 (Ind. Ct. App. 2015). At oral argument, counsel for the Law Firm expressed disagreement at the argument that account stated does not apply to legal services agreements, because that would require attorneys to prove the reasonableness and veracity of each item on their bills. We, in turn, express our concern that an attorney would expect a rubber stamp of his bills when those bills are questioned by a client.

[5] The Law Firm insists that because its Verification of Debt, attached to the complaint, several times uses the word "account," the issue was sufficiently raised. Reply Br. p. 9-10. To say the least, this argument is not compelling.

proceedings such that it could be fairly litigated. The Law Firm directs our attention to its *post-trial* brief, which—for the first time in the litigation—includes authority related to an account stated claim. Reply Br. p. 9. We can only find that an issue that was not raised during the litigation of a case cannot be snuck in via a post-trial brief.

[15] Plainly, SFC was unable to defend against this claim—because it was never made—and the trial court was unable to rule on it—because it was never litigated. *See GKC Ind. Theatres, Inc. v. Elk Retail Inv'rs, LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002) (observing that the "rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had the opportunity to consider"). Consequently, we can only find that anything related to account stated has been waived and we will not address it herein.[6], [7]

---

[6] The Law Firm argues that the trial court erred by finding that the amount already paid by SFC—totaling over $94,000—suffices to compensate the Law Firm for its legal services, which the trial court found were reasonably valued at $30,000. The Law Firm frames this as a "set-off," noting that the money already paid by SFC occurred pursuant to invoices in April and May and insists that each invoice created a new contract—a new "account stated[.]" Appellant's Br. p. 40-41. But we have already found that the Law Firm did not properly plead or litigate this case as an account stated case. Because the trial court did not err by treating this as a breach of contract case, and because it properly found that the reasonable value of the Law Firm's services under that contract totals $30,000, it was not erroneous to conclude that where SFC has already paid the Law Firm over three times that amount, the Law Firm is owed no more money.

[7] We also note that even if a claim for account stated had been properly pleaded and litigated, the Law Firm would not be entitled to relief. In an account stated case, the amount on a statement is merely prima facie evidence of the amount owed; once the prima facie case is made, the burden of proof shifts to the account stated debtor to disprove the claimed amount. *B.E.I., Inc. v. Newcomer Lumber & Supply Co.*, 745 N.E.2d 233, 237 (Ind. Ct. App. 2001). Here, SFC disproved the claimed amounts by showing that the statements did not separate the work performed for different entities and individuals from that done for SFC and that the work performed by Elf was never properly reviewed. The Law Firm was unable to counter this evidence

## Failure to Separate Billing for Other Entities

[16] In its order, the trial court held that the Law Firm could recover its fees for document review and production but not for any of its other legal work. The basis for this portion of the order was twofold: first, "the Firm's invoices did not itemize or separate which work was performed for each legal entity or individual" aside from SFC; and second, after serious questions were raised about Elf's work, the Law Firm did not write off his billable hours and instead merely adjusted the amount on its invoices by 50%. Appealed Order p. 4-5.[8]

[17] With respect to the Law Firm's failure to separate the work performed for SFC from the work performed for other, separate entities and individuals, we note that it is undisputed that SFC was the only entity with which the Law Firm had a contractual relationship. But the Law Firm billed SFC for the work it performed for those other, separate entities and individuals, and its time entries are so ambiguous that it is impossible to tell what work was performed for SFC alone.[9]

---

sufficiently to convince the trial court. Therefore, even if account stated applied to this case, the result on appeal would not be changed.

[8] To the extent that the Law Firm argues that SFC never raised a timely objection to this billing practice or to the reasonableness of the fees billed, we note that in addition to acting as attorney for SFC, the Law Firm was also acting as trustee responsible for reviewing and approving (or disapproving) all bills—legal and otherwise—remitted to SFC. Therefore, it was the responsibility of *Bopp*, who assumed this mantle, to object to the Law Firm's bills. It goes without saying that he never did so.

[9] To the extent that the Law Firm argues that the first time this issue was raised was during the cross-examination of Bopp at trial, it is incorrect. SFC and Schock were explicit in their pretrial contentions that (1) there was an attorney-client relationship only between SFC and the Law Firm; (2) Schock and any other individuals or entities were separate and distinct from SFC; and (3) the Law Firm's "time entries are so

[18]    In considering this quandary, the trial court referenced Rule 1.8(f) of the Rules of Professional Conduct, which provides as follows:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
>
> (1) the client gives informed consent;
>
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
>
> (3) information relating to representation of a client is protected as required by Rule 1.6.

The Law Firm notes, correctly, that only our Supreme Court may sanction attorneys for violations of the Rules of Professional Conduct. Ind. Code § 33-24-1-2(b). But this argument is a red herring, inasmuch as the trial court did not find that the Law Firm had violated Rule 1.8(f). Instead, the trial court used Rule 1.8(f) as a guidepost to determine whether the Law Firm was entitled to recover the fees it charged to SFC, which included work it performed for the other entities. The trial court did not exceed its authority by determining that because the Law Firm did not abide by Rule 1.8(f), it was not entitled to collect those fees. And because the billing records are so vague and ambiguous, it is

---

ambiguous that even the lawyer performing the work cannot identify with any certainty what was done." Appellant's App. Vol. II p. 31. Moreover, we note that even if the cross-examination of Bopp had been the first time the issue was raised, the Law Firm could have questioned him on the topic on redirect or objected to the line of questioning altogether, but it did neither.

impossible to separate the work done for the other entities from the work done for SFC, meaning that the trial court did not err by concluding that the Law Firm is not entitled to recover any of it.[10]

[19] Regarding Elf's work, the record shows that Bopp received a complaint from SFC regarding three days in June 2015 when Elf claimed to have worked in the campaign office but was only seen once for a brief period of time. When Bopp approached Elf about the time entries, Elf resigned on the spot. The Law Firm did not inform SFC what had happened. With respect to those three days, the Law Firm wrote off seven of the ten hours Elf claimed to be there, but still billed SFC for Elf's travel time between Terre Haute and Peoria. And the Law Firm did not endeavor to review Elf's other billed work for SFC, instead merely providing a 50% credit for the other entries rather than reviewing them in detail and/or writing them off. Given these facts, we cannot find that the trial court erred by declining to require SFC to pay for Elf's work.

[20] In sum, the Law Firm did not meet its burden as plaintiff to prove that it was entitled to recover all fees. Because SFC did not have to pay the Law Firm for its work for the other entities and individuals and the bills are so ambiguous

---

[10] The Law Firm notes that the other entities are affiliated committees with SFC and that the individuals involved work for the affiliated committees. It also maintains that it did the work for these other entities at SFC's request. Even if we were to accept, for argument's sake, that this was true, it would not change the outcome. The Contract is between SFC and the Law Firm and is for legal services provided to SFC *only*. If the Law Firm desired to perform legal work for other entities, it was free to enter into separate agreements with those entities, but it did not do so. And because of the way in which the Law Firm billed its time, it is impossible to separate one client/entity from another. Consequently, this argument is unavailing.

that it is impossible to separate that work from the SFC work, and because SFC does not have to pay for the problematic work performed by Elf, the trial court did not err by determining that the only fees that the Law Firm may recover are those related to the document review and production performed solely for SFC.

### *Reasonableness of Fee*

[21] Next, we must consider whether the trial court erred by concluding that a reasonable fee for the document review and production performed by the Law Firm was $30,000 (as opposed to the over $90,000 it demanded).

[22] At trial, SFC offered the testimony of Ray Biederman, an electronic document production expert. He testified that his company could have responded to the subpoenas within two weeks for less than $30,000. Biederman also testified that Bopp's lack of familiarity with technology increased the cost of the review and the production of the privilege log, which did not conform with basic legal guidelines. The trial court explicitly found Biederman's testimony "to be informative and convincing." Appealed Order p. 5.

[23] The Law Firm called a rebuttal witness, Jeffrey Gallant, who is an attorney with the Law Firm. Gallant admitted, however, that document production and review does not constitute a large percentage of his current legal practice. As a result, the trial court largely discounted his testimony because of his "minimal experience" with document review and production. *Id.*

[24] The trial court's conclusion that $30,000 is a reasonable fee for the document review and production falls squarely within the evidence presented at trial. The

Law Firm may wish that the trial court had believed its witness over SFC's, but the fact that the trial court credited Biederman over Gallant does not constitute an error. The Law Firm's arguments to the contrary are merely requests to reweigh the evidence and reassess witness credibility, which we may not and will not do.[11] We find no error with respect to the trial court's conclusion that the reasonable value of the Law Firm's legal services performed in this matter is $30,000.[12]

### *Failure to Order Interest and Costs*

[25] Finally, the Law Firm argues that the trial court erred by failing to award interest and costs for the $30,000 the trial court determined was owed to the Law Firm by SFC. It directs our attention to the following provision in the Contract:

> All statements are due and payable within 30 days of receipt by Client. Interest accruing at 1.5% per month will be applied to

---

[11] The Law Firm insists that Biederman reviewed only the subpoenas for documents after the May production and did not review the May production itself. In support of this statement, it directs our attention to the Appellant's Appendix Volume II page 80, which is merely a subpoena requiring someone named Michael Goode to testify before a grand jury. Appellant's Br. p. 39; Reply Br. p. 19. Nothing in that document supports the Law Firm's contention. Furthermore, when Biederman testified, he agreed that he had reviewed "the document requests attached to the Subpoenas in this case," without a limitation on date. Tr. Vol. III p. 149, 151 (referencing "the Subpoenas" without limitation), 166 (same), 169 (same). Additionally, at oral argument, counsel for SFC indicated that Biederman reviewed *all* subpoenas and documents in the case, without limitation. As we find no basis in the record to conclude that Biederman limited his review to the subpoenas issued following the May production, we decline to address this argument.

[12] Another red herring argument made by the Law Firm is that the trial court erroneously relied on the doctrine of quantum meruit in reaching its decision. The trial court did not rely on quantum meruit—in fact, that doctrine is not referenced even once in the order. Instead, it found that the Law Firm did not meet its burden as plaintiff on a breach of contract claim.

> past due accounts until paid. Client agrees to pay all attorney
> fees and costs of collecting Client's account if legal action is
> taken to collect fees and costs due The Firm.

Appellant's App. Vol. II p. 59. The Law Firm argues that, pursuant to that provision, it should receive 1.5% interest compounded monthly, which it calculates totals $39,492.33. It also insists that it should be awarded fees and costs for its efforts to collect fees and costs from SFC.

[26] This, yet again, is an attempt by the Law Firm to reframe the trial court's order in a way that does not represent what it actually held. The trial court found that the total of the reasonable value of the Law Firm's legal services to SFC under the Contract is $30,000. It also found that SFC had already paid to the Law Firm over three times that amount. In other words, no payments are late—there is nothing on which to calculate interest. And as for the Law Firm's fees expended in pursuing this litigation, because the trial court found in favor of SFC, we can only find that SFC is not required to pay those fees.

[27] Additionally, the Law Firm points us to the provision of the Contract stating that SFC was to be responsible for

> all costs and expenses, which are in addition to the hourly
> charges for legal services. Costs and expenses include, but are
> not limited to, court charges, copies, postage, telephone, fax,
> travel, parking, special materials, exhibits, photographs,
> investigators, experts, computer assisted legal research and all
> other disbursements, costs, or expenses attributable to said legal
> services.

*Id.* at 58. The Law Firm notes that costs, which covers the expenses of litigation, are distinguishable from fees charged for legal services. It insists that it is entitled to recover its costs—which it calculates at $8,073.59, and when the 1.5% monthly interest is added, totals $14,370.99—regardless of the valuation of its legal services. But in its brief, the Law Firm offered no evidence supporting these figures aside from a footnote containing the numbers with no citation to the record. Therefore, we are unable to review the reasonableness of this demand.

[28] The judgment of the trial court is affirmed.

Bradford, C.J., and Pyle, J., concur.