Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANTS:

**MICHAEL L. CARMIN**
**GREGORY A. BULLMAN**
CarminParker, PC
Bloomington, Indiana

ATTORNEY FOR APPELLEE
ZOLLMAN FARMS, INC.:

**EDWARD J. LIPTAK**
Carson Boxberger, LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY McNAMARA, TAMARA GOODFELLOW, and TERESA MELTON, | ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 36A05-1404-PL-180 |
| ZOLLMAN FARMS, INC., TESTAMENTARY TRUST OF JACK D. ROLLER, and THOMAS MICHAEL CARR, | ) ) ) ) ) | |
| Appellees-Defendants. | ) ) | |

APPEAL FROM THE JACKSON SUPERIOR COURT
The Honorable Roger Duvall, Special Judge
Cause No. 36D01-1205-PL-11

**January 13, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Timothy McNamara and his sisters, Tamara Goodfellow and Teresa Melton (collectively "Appellants"), own a landlocked forty-acre tract in rural Jackson County that has been in their family for decades. Appellants filed a complaint against nearby landowners, including Zollman Farms, Inc. ("Zollman"), requesting that a path that runs from a county road to their property be declared a public road by virtue of its use for over twenty years before the relevant statute regarding public roads was amended in 1988. After hearing evidence and visiting the site, the trial court found that Appellants and others had used the path for over twenty years before 1988 but concluded that Appellants had failed to establish the existence of a public road by use.

On appeal, Appellants agree with the trial court's factual findings but contend that the court reached the wrong conclusion based on those findings. We agree with Appellants and therefore reverse and remand for further proceedings consistent with this opinion.

**Facts and Procedural History**

In May 2012, Appellants filed a complaint against nearby landowners requesting that a path leading to Appellants' property be declared a public road by use as well as "all other and proper relief." Appellee's App. at 3. By the time of trial, all defendants except Zollman, Testamentary Trust of Jack D. Roller, and Thomas Michael Carr had been dismissed from the case. The trial court heard evidence and also visited the site. In March 2014, the court issued an order that reads in pertinent part as follows:

2

## Findings of Fact

1.      Plaintiffs are the record owners of a square-shaped, 40-acre tract in Carr Township in southwestern Jackson County.  Such ownership is evidenced by a Warranty Deed to the plaintiffs and their brother, Thomas McNamara, Jr., dated July 18, 2005.  On July 8, 2011, Thomas McNamara, Jr. quitclaimed his interest in the property to the plaintiffs, who are his sisters and brother.

2.      The plaintiffs' 40-acre tract described in paragraph 1 ("McNamara tract") is bordered on four sides by tracts owned by R L Zollman Farms, Inc.  Immediately to the south of the McNamara tract is a 160-acre R L Zollman Farms, Inc. tract.  This is a very remote and sparsely populated section of Jackson County, Indiana.

3.      Located about a mile to the southeast of the McNamara tract, there is County Road 500 S, which is unimproved.  County Road 500 S begins at County Road 925 W (which is a paved county road) and runs directly west for a distance of approximately 1,850 feet, terminating at the southeast corner of a one acre parcel owned by defendant, Thomas Michael Carr.

4.      County Road 500 S is a farm lane that was bulldozed by the Jackson County Highway Department in June, 2012 with some gravel being added near its beginning.  Additionally, an identifying road sign, a "DEAD END" sign, and a "ROAD ENDS HERE" sign were installed.  A view of this county road revealed road that was crossed by drainage creeks or waterways and a road that for the second half of the road was obstructed by tree limbs and branches.  The road was not passable [b]y vehicular traffic for half of the distance of the road.

5.      In their Complaint for Declaratory Judgment and First Amendment Complaint for Declaratory Judgment, plaintiffs alleged that, for more than 20 years before January 1, 1988, there existed a 12-foot wide gravel road running from County Road 925 W to the west along what is now County Road 500 S and continuing across portions of tracts owned by defendants Carr, Roller, and R L Zollman Farms, Inc., running in a west-northwesterly direction to the south boundary of the McNamara tract.  Further, plaintiffs have alleged that the 12-foot wide gravel road is a "public road" that was used continuously by members of the public in general.

6.     There was no evidence presented by plaintiffs of a 12-foot wide gravel road as is described in paragraph 10 of their Complaint filings.  At most, some gravel and pieces of stone were applied at the beginning of County Road 500 S and a portion of the Roller tract to the east of the 160 acre R L Zollman Farms tract in connection with timber removal and/or to allow the transport of farm equipment.

7.     Some witnesses (e.g. Thomas McNamara, Sr.) testified about the existence of a "worn path" running from the end of the lane now called County Road 500 S in a northwesterly direction to the south boundary line of the McNamara tract.  Over the years from the 1960s to plaintiffs' ownership in 2005, vehicular traffic of any regular frequency on the path was largely impossible because of soft, wet ground in which vehicles would become stuck.

8.     Plaintiffs and their relatives, including Thomas McNamara, Sr., reside or formerly resided in Bluffton, which is located in Wells County in northeast Indiana.  Their visits to the McNamara tract occurred no more frequently than once or twice a year, for the purpose of walking to the trac[t], collecting geodes, and enjoying the peacefulness of the area.  These visits often coincided with a camping trip to Starve Hollow State property in Jackson County.  Thomas McNamara, Sr. testified that nine (9) out of ten (10) times he and family would walk back to their property.  Based upon the frequency of visits this means the family would, at most, only drive back to their property every four (4) or five (5) years.

9.     Sometime after he became the owner of the McNamara tract and before he quitclaimed his interest to his siblings, Thomas McNamara, Jr. and others operated motorized vehicles along the path alleged by plaintiffs, and in many other areas of the property of the defendants causing numerous deep ruts and other damage to the property of the Carr, Roller and R L Zollman Farms, Inc. defendants.  The ruts and damage clearly extended to areas outside the path of any alleged road or path.

10.     With the assistance of Paul Goen, Thomas McNamara, Jr. placed "Private Property" signs and rope on the R L Zollman Farms 160-acre tract parallel to and approximately 400 feet south of the boundary line between the McNamara tract and the 160-acre R L Zollman Farms tract.  Motorized vehicles were operated on the 400-foot wide northern-most segment of the R L Zollman Farms 160-acre tract as well as on other areas of that tract, including a portion known as "Back Break Hill".

4

11.     As vehicular operation crossed the defendants' tracts caused deep ruts, vehicles were moved laterally, causing additional rutting and damage, leading to the installation, on October 15, 2010, of a gate and fence by R L Zollman Farms, Inc. along a portion of the east property line of the 160-acre tract, adjacent to the Roller tract.  The gate and fence were installed in an area where the path was drawn by Thomas McNamara, Sr. drew of [sic] Exhibit 3.

12.     The gate and fence installed by R L Zollman Farms, Inc. has been effective in reducing vehicular traffic and damage on the defendants' property.  The existence of the gate and fence does not prevent a person from gaining access to the McNamara tract by walking to that property, as evidenced by photograph 6 of plaintiffs' Exhibit 10.…

13.     The path drawn by Thomas McNamara, Sr. that runs in the northwesterly direction from the end of County Road 500 S on plaintiffs' Exhibit 3 is not the only means of gaining access to the McNamara tract.  Paul Goen and Richard Brannaman, witnesses called by the plaintiffs, have both entered the McNamara tract from the north, from the Martin tract or otherwise.  Such access means that the gate and fence installed by R L Zollman Farms, Inc. does not prevent access to the McNamara tract by persons on foot.

14.     Plaintiffs have seen tire tracks along the path drawn by Tom McNamara, Sr. during the years that they visited the property on an annual or bi-annual basis, but they do not know who operated the vehicles – i.e. whether the owners of the property or others.

        ….

16.     Thomas McNamara, Jr.'s placement of the "Private Property" signs, in October, 2010, warning trespassers to stay off what he believed to be the McNamara tract, indicated the belief by at least one of the owners of the McNamara tract that there is no public road running to and through the McNamara tract.  Those signs stated that the McNamara tract was private property and that "hunting, fishing, trapping, or trespassing for any purpose is strictly forbidden."

17.     There has never been a school, store, or other establishment that would cause the public to use a road leading from County Road 925 W to the McNamara tract.

5

18.    A U.S.G.S. map dated 1959 (Exhibits 1 and C) show[s] an unimproved dirt road which ran west from County Road 925 W and ended at the "Orchard Farm" located in the southern half of the 160-acre tract of R L Zollman Farms, Inc.  While there are a few limited areas where the remains of such a road may be identified, this path has long been abandoned and is impassable.  There is no map showing any road to the McNamara tract coming from the south across the Carr, R L Zollman Farms, and Roller properties.  The area immediately to the south of the property of the plaintiffs bordering the north half of the Zollman 160 tract is characterized by two fields previously cleared and farmed through which plaintiffs would have accessed their property.  While the Jackson County Highway Department has had roads in its inventory which have been abandoned because of non-usage, there has never been a road to the McNamara tract recognized or included in the Jackson County road inventory.

19.    The weight of the evidence is that there has never been a road running northwesterly to the McNamara tract from the end of County Road 500 S that was commonly used by the public.  Instead, the evidence shows that persons using the trail drawn by Thomas McNamara, Sr. on Exhibit 3 were the owners of the property, timber cutters hired to remove timber for sale, persons who were permitted to cross the land for hunting and nature walks to the McNamara tract, or trespassers.  Any old path to the "Orchard Farm" has long been abandoned.

20.    There is no express easement in favor of the McNamara tract upon the tracts owned by the defendants.  While the McNamara tract is surrounded by other tracts without an express access easement, that "land locked" condition is not unique to Jackson County.  Exhibit A, which shows only a small portion of Carr Township, contains other such tracts besides the McNamara tract.

Conclusions of Law

On the facts found above, the Court concludes as follows:

….

2.    Plaintiffs have not met their burden of proving a prescriptive easement over the defendants' land by clear and convincing evidence, failing

6

to establish the four necessary elements of control, intent, notice, and duration.[1]

      3.     Plaintiffs have not proven, by the greater weight of the evidence, that there has ever been a public road running to the McNamara tract in a northwesterly direction from the end of County Road 500 S. Persons using the trail drawn by Thomas McNamara, Sr. on Exhibit 3 were owners, invitees (e.g. timber cutters), licensees (e.g. neighbors), or trespassers.

      4.     To the extent that plaintiffs' request for declaratory judgment seeks an order to R L Zollman Farms, Inc. to remove the gate located along the R L Zollman Farms , Inc. – Roller boundary line, that request is denied.

      5.     Because the McNamara tract is "land locked" by surrounding tracts of R L Zollman Farms, Inc. and/or other property owners, plaintiffs' access to the McNamara tract will need to be gained by permission or express easement. That access issue is not before this Court.

Appellants' App. at 13-18 (citations omitted).

This appeal followed. Zollman was the only defendant to file an appellee's brief.[2]

**Discussion and Decision**

The trial court entered findings of fact and conclusions thereon at the parties' request pursuant to Indiana Trial Rule 52(A). In such situations, we typically apply a two-tiered standard of review; we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Sexton v. Sexton*, 970 N.E.2d 707, 710

---

[1] Appellants state that they "have made no claim in this case based on a prescriptive easement" and that the reasons for the trial court's mention thereof "are not entirely clear[.]" Appellants' Br. at 2 n.1. The record reflects that the trial court adopted this conclusion from Zollman's proposed findings and conclusions. Appellants' App. at 90. To be sure, Appellants' amended complaint mentions a "public way or easement," *id.* at 25, but in his opening statement, Appellants' counsel focused solely on establishing a public road by use. Tr. at 9-10.

[2] Pursuant to Indiana Appellate Rule 17(A), "[a] party of record in the trial court … shall be a party on appeal." Therefore, we have included the other defendants in the case caption.

(Ind. Ct. App. 2012), *trans. denied*. But here, Appellants do not challenge the trial court's

factual findings.[3] They argue only that the trial court "drew the wrong legal conclusion from

those facts." Appellants' Br. at 8. "When the facts of a case are not in dispute and the only

allegation of error is that the trial court misapplied the law, our task on review is to correctly

apply the law to the undisputed facts." *Atkins v. Niermeier*, 671 N.E.2d 155, 157 (Ind. Ct.

App. 1996).

> Before 1988, Indiana Code Section 8-20-1-15 provided in pertinent part that
>
> "[a]ll county highways heretofore laid out according to law, or used as such for twenty (20) years or more, shall continue as originally located and as of their original width, respectively, until changed according to law." *See Zakutansky v. Kanzler*, 634 N.E.2d 75, 82 (Ind. Ct. App. 1994). Despite the fact that the statute was amended in 1988 to remove the language in the previous sentence, we may still hold that the public accepted a street by usage if the street was used as a public street for twenty years prior to 1988.[4] *Id.* If the street became a public street before 1988, then the public has a vested right in that street, and the vested right was not eliminated by the amendment of the statute. *Id.*

*Chaja v. Smith*, 755 N.E.2d 611, 614 (Ind. Ct. App. 2001).

"Public" in this context means "'all those who have occasion to use the road.'"

*Gillespie v. Duling*, 41 Ind. App. 217, 221, 83 N.E. 728, 730 (1908) (citation omitted). "The

law does not fix the number of persons who must travel upon a road to determine its

existence." *Id.* at 221, 83 N.E. at 730. "A road is none the less a highway, though rarely

---

[3] Nevertheless, Zollman reproduced all the trial court's findings (with citations to the record) in its statement of facts and reproduced many of them yet again in the argument section of its brief.

[4] Indiana Code Section 8-20-1-15 now reads, "A county highway right-of-way may not be laid out that is less than twenty (20) feet on each side of the centerline, exclusive of additional width required for cuts, fills, drainage, utilities, and public safety." Cases often refer to "highway," "road," "street," and "way" interchangeably, as do we.

used, if used by those who desire to go that way." *Stewart v. Swartz*, 57 Ind. App. 249, 252, 106 N.E. 719, 721 (1914) (citation omitted); *see also Cozy Home Realty Co. v. Ralston*, 214 Ind. 149, 151, 14 N.E.2d 917, 918 (1938) ("Use is the sole test, though frequency of use or the number of users is unimportant. It is enough if it is free and common to all who have occasion to use it as a public highway."). The fact that a path "is not open at both ends and furnishes access and egress to but one property owner does not prevent its being a public highway." *Gillespie*, 41 Ind. App. at 221, 83 N.E. at 730; *see also Fenley Farms, Inc. v. Clark*, 404 N.E.2d 1164, 1170 (Ind. Ct. App. 1980) ("The fact that a highway is rarely if ever used by persons other than landowners makes it nonetheless a public road. If the road is open only on one end, as here, and if it goes only to one property, it is still a public road. A road may be a public highway although it is of no great length and terminates on private property.") (citing, inter alia, *Gillespie* and *Stewart*). "The fact that the highway officials have not worked or improved the road does not change its status." *Stewart*, 57 Ind. App. at 252, 106 N.E. at 721. Moreover, "it is immaterial whether the use is with the consent or against the objection of the adjoining landowner[.]" *Id*. at 252, 106 N.E. at 720-21.[5]

---

[5] Both parties mention *Jackson v. Board of Commissioners of County of Monroe*, 916 N.E.2d 696 (Ind. Ct. App. 2009), in which another panel of this Court (including the author of this opinion) stated that "[a] road does not become a public road simply because the owner selectively permits a few members of the public to use it" and that "[p]ublic use means the road is 'free and clear to all who have occasion to use it as a public highway,' not just certain members of the public who have received permission to use it." *Id*. at 703 (quoting *AmRhein v. Eden*, 779 N.E.2d 1197, 1207 (Ind. Ct. App. 2002)). Here, the road was used by members of the public other than those who received permission to use it, and therefore we need not accept Appellants' invitation to disregard *Jackson* as against the weight of prior authority

9

Appellants contend that the trial court "correctly noted the use [of the path] from the McNamara family, the neighbors, the loggers, the ATV riders, the hunters, the nature walkers, and others" from at least the early 1960s onward but that, "[g]iven the [McNamaras'] uncontested and uncontroverted use of The Path, and given the great many people in addition to the McNamaras who have also used The Path over the years, the trial court was wrong to conclude that no public road has been created." Appellants' Br. at 15-16. We agree with Appellants. Although the path is not a twelve-foot-wide gravel road as alleged in Appellants' complaint, it was used by the McNamaras and other members of the public over a period of at least twenty years before 1988. As the foregoing caselaw shows, the frequency of use and the number of users are unimportant, and the trial court's characterization of those users as owners, invitees, licensees, and trespassers is irrelevant. It is also irrelevant that the path was neither improved nor inventoried by the county before 1988.[6] And finally, it is irrelevant that Zollman erected a gate and fence across the path in 2010 because a public road would have been (and must have been) established by 1988.

---

[6] The trial court's order suggests, but Zollman does not specifically contend, that a path must be paved or used only by motorized vehicles in order to become a public highway by use. The caselaw does not impose such requirements. *See, e.g.*, *Pitser v. McCreery*, 172 Ind. 663, 671, 88 N.E. 303, 307 (1909) (describing a public highway as "'[e]very kind of public way common to all citizens, whether a footway, horseway, cartway, or a way by water.'") (citation omitted); *Fenley*, 404 N.E.2d at 1170 ("The fact that public authorities have not worked or improved the highway does not change its status, nor does evidence that prior to the bulldozing, the road was unsuitable for vehicular traffic.") (citation omitted). In 1989, one year after it amended Indiana Code Section 8-20-1-15, our legislature defined "public highway" as "a street, alley, road, highway, or thoroughfare in Indiana used by the traveling public." Ind. Code § 8-2.1-17-14. Because we are concerned with the law pre-1988, Section 8-2.1-17-14 is not controlling here.

Based on the undisputed facts and the relevant caselaw, we conclude that Appellants established the existence of a public road by use and that the trial court erred in concluding otherwise. Therefore, we reverse and remand with instructions to enter judgment in favor of Appellants and for further proceedings consistent with this opinion, such as determining the width of the road and any additional relief to which Appellants may be entitled, such as the removal of Zollman's gate and fence. *See Pitser v. McCreery*, 172 Ind. 663, 674, 88 N.E. 303, 308 (1909) ("[T]he width at the end of the 20 years' user is the width the statute fixes as the width of the highway.").

Reversed and remanded.

FRIEDLANDER, J., and KIRSCH, J., concur.